## UNITED STATES *v.* ANDERSON ET AL.

## UNITED STATES *v.* YALE & TOWNE MANUFACTURING COMPANY.

### APPEALS FROM THE COURT OF CLAIMS.

Nos. 337; 420.    Argued November 20, 1925.—Decided January 4, 1926.

1. The Revenue Act of 1916 imposed a tax on net income and profits ascertained by deducting from gross income, expenses paid, losses sustained, interest and taxes paid during the calendar year, but provided, § 13(d), that "a corporation . . . keeping accounts upon any basis other than that of actual receipts and disbursements, unless such other basis does not clearly reflect its income, may, subject to regulations of the Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury, make its return upon the basis upon which its accounts are kept, in which case the tax shall be computed upon its income as returned."

*Held,* that where the taxpayer's books, reflecting its income, were kept upon an "accrual" basis, i. e., by charging against income earned during the taxable period (1916) the expenses incurred in and attributable to the process of earning income during that period, and made its return upon that basis and not the basis of actual receipts and disbursements, it was permitted under the statute, as correctly construed by a Treasury regulation, to include in its deductions the amount of a "reserve" entered on its books for taxes imposed by the United States on the profits of munitions made and sold by the taxpayer during that year, although the tax had not "accrued" in the sense of having been assessed and become due; and that it was not permissible, as the taxpayer attempted, to defer deduction of the tax until the income return for the following year, during which the tax became due and was paid. Pp. 438, 441.

2. Findings considered and *held* to show that the books of a tax payer were kept on the basis of accruals and reserves to meet liabilities incurred. P. 442.

3. In a suit to recover a tax erroneously exacted, the burden is on the plaintiff to prove the facts establishing invalidity of the tax. P. 443.

60 Ct. Cls. 100; *Id.* 440, reversed.

APPEALS from judgments of the Court of Claims in two suits brought by the Trustees in dissolution of the Burton-Richards Company, a corporation and by the Yale & Towne Manufacturing Company, to recover income taxes alleged to have been erroneously exacted under the Revenue Act of 1916.

*Solicitor General Mitchell,* with whom *Mr. John B. Milliken,* Special Attorney in the Bureau of Internal Revenue, was on the brief, for the United States.

Under the Revenue Act of 1916 a taxpayer was permitted to make his income-tax return on an accrual basis if his books were kept on that basis. Corporation Excise Tax Law of 1909 plainly required the computation of net income on the basis of actual receipts and disbursements. There was no provision for accrual systems of accounting or for including items of expense incurred but not due and paid. The first corporation income tax Act of October 3, 1913, like the 1909 Act, provided for the calculation of net taxable income on the receipts and disbursements basis. Under these two Acts some departures from the strict receipts and disbursements basis were permitted by the Commissioner of Internal Revenue, such as the use of inventories. This legislation shows that the subject was undeveloped and the resulting system was a mongrel one, but, in the main, the returns were required to be made on a receipts and disbursements basis. *Lumber Mutual Fire Ins. Co.* v. *Malley,* 256 Fed. 380; *Maryland Casualty Co.* v. *United States,* 52 Ct. Cls. 201; same case, 251 U. S. 342. The first decided shift occurred in the

Revenue Act of 1916, evidenced by the insertion of a new provision, § 13 (d). This allowed the taxpayer the option to make his return on a cash basis without regard to how he kept his books, or if he kept his books on some other basis to make his return upon the basis upon which his accounts were kept. Montgomery's Income Tax Procedure, 1918, pp. 67–68. In connection with the accrual basis offered as an alternative by the 1916 Act, the Treasury Department, in T. D. 2433, issued January 8, 1917, approved of the practice of setting up and maintaining reserves to meet liabilities accrued but not yet due and including those the amount of which may not have been definitely determined. The next shift was made in the Act of February 24, 1919, c. 18, 40 Stat. 1057, which limited the taxpayer to making his return on the basis on which his books were kept provided the basis tended to correctly show net income. Under § 12 (a) of the Act of 1916, it is clear that if the taxpayer used the accrual basis in keeping his accounts and made his return on that basis he could not be permitted to depart from the accrual basis in dealing with any item of expense.

Under the accrual system an expense accrues when all the events have occurred from which liability is determined and the liability has become fixed, even though payment is not yet due. The munitions tax for 1916 accrued in 1916, and the taxpayer made no mistake in entering the item on its books for that year as an accrued expense. Under the accrual system of accounting, income is said to be accrued when it is definitely receivable, although its payment may not be due, and liabilities or expenses are said to be accrued when the events have occurred from which liability is determined and the liability has become fixed, even though payment is not yet due. The basic idea under the accrual system of accounting is that the books shall immediately reflect obligations and expense definitely incurred and income definitely

earned without regard to whether payment has been made or whether payment is due. Under this system, the use of the word "accrued" does not signify that the item is due. On the contrary, the accrual system wholly disregards due dates. Neither is it necessary that the amount of an incurred liability be accurately ascertainable in order to "accrue" it. Montgomery, Auditing Theory and Practice, 3rd Ed. Vol. 1, pp. 239, 240; Esquerre, Applied Theory of Accounts, pp. 299–301; Holmes, Federal Income Tax, 1917, pp. 299–301.

The munitions tax for 1916 is based on the amount of munitions profits for that year; it was an actual expense or element of cost in the production of the income for that year; the law imposing the tax was in force during that year; definite liability to pay the tax had arisen by the end of the year; every fact or circumstance affecting the amount of the tax had occurred by the end of the year, and no fact or event occurring after the end of the year was a factor in the computation or determination of the tax. By the close of the year, liability for the tax had become definitely fixed, the tax being based on the result of operations for 1916, which were closed December 31, 1916. Neither liability for the tax nor the amount properly payable could be affected under the law by anything occurring after December 31, 1916. It is true the monthly estimates of the amount of the tax appearing in the monthly trial balances during the year 1916 were tentative and might vary up or down from month to month, and required final correction in closing the books for the year, but if the accounts of the corporation were correctly kept and its profits computed in the manner required by law, the amount of the munitions tax was definitely ascertainable at the end of the year. In this case the taxpayer knew the amount of the munitions tax at the close of the year when it entered the reserve on its books as well as it did when the return was made and the

tax paid. The fact that a difference of opinion might arise after December 31, 1916, between the taxpayer and the Commissioner of Internal Revenue as to what was a reasonable depreciation on plant and equipment, or as to other items of that nature, did not provide new factors occurring after December 31, 1916, varying the tax. The accrual by the taxpayer of this tax on its books for 1916 was not only proper and in accordance with good accounting practice but was expressly approved by T. D. 2433. Cases of *United States* v. *Woodward,* 256 U. S. 632, and *Ed. Schuster & Co., Inc.,* v. *Williams,* 283 Fed. 115, distinguished.

The only respect in which case No. 337 differs from No. 420, is because of a dispute as to whether the taxpayer's books were kept and its income-tax return made on a cash basis or an accrual basis. The Findings show that the books were kept and the return made on the accrual basis. In this, a suit to recover taxes paid, the burden is on the taxpayer to show that the tax was illegally assessed and to overcome the *prima facie* validity of the assessment, and unless the Findings of the Court of Claims affirmatively show that the books were kept and the income-tax return made on a cash basis they do not sustain the judgment.

*Mr. John W. Davis,* with whom *Messrs. Frank S. Bright* and *Montgomery B. Angell* were on the brief, for appellees, in No. 337.

Under the Revenue Act of 1916, taxes may properly be taken as a deduction from income only in the year when paid, regardless of the character of the return made. In keeping its books for the year 1916, the Burton-Richards Company took up on its books all items of gross income and general business expenses as and when such items became fixed and ascertainable in the form of accounts receivable and accounts payable regardless of whether the

amounts shown were actually received or paid in cash. Interest was entered on its books during 1916 only as and when actually received or paid within the year. The Company's interest on its indebtedness was all paid in 1916, and so appeared on its books. No losses nor bad debts appeared in 1916, nor were any set up on its books during that year. The Company set up on its books month by month an arbitrary "reserve for taxes" of $35,000, as set forth in the Findings of Fact. It did not pretend in so doing to be "accruing" the amount for income tax or other purposes. The service of such an entry was solely to reflect in conjunction with other entries the general financial condition of the Company as a going concern and to guide it in the declaration of dividends or the making of other disbursements. In the original and amended income tax returns of the Burton-Richards Company for 1916 and 1917 there was included as gross income all items arising from sales made within the year whether paid or payable in cash, while the company took as deductions: (a) General expense, whether paid in 1916 or not; (b) Depreciation charged off; (c) Interest paid; and (d) Taxes, domestic, paid.

In the earlier Income Tax Acts Congress did not make what is commonly known as "commercial net income" the basis for the tax levy. That which is subject to tax under these several Acts is "net income," and in every case "net income" is ascertained by deducting from gross income certain arbitrary deductions. Obviously, a literal interpretation of the 1909 Excise Tax Act demanded a strict and thorough-going cash basis for making return and paying tax. Yet, from the first, the Treasury Department not only permitted but required a departure from a strict cash basis. See Regulations 31, under the 1909 Act, Arts. 4, 5; *Id.* ¶ 77, T. D. 1742. With these formal regulations issued by the Treasury Department before it, Congress, in passing the 1913 Revenue Act, em-

ployed substantially the same phraseology as to gross
income, business expenses, losses, interest, and taxes as it
had employed in the 1909 Act. Under this, also, the
Treasury necessarily permitted departures from the strict
cash basis, Regulation 33, Jan. 5, 1914, Arts. 104, 158. But
when it came to taxes, the Treasury invariably permitted
them to be taken as deductions only in the year when
"actually paid." *Id.* Art. 156.

The 1916 Act employed the same phraseology as the
earlier Acts had used in defining net income subject to
tax. The Treasury Department in its regulations under
the 1916 Act, namely Regulations 33 (Revised), as in the
prior regulations under the 1909 and 1913 Acts, defined
gross income as "the total sales . . . during the year"
(Article 91), required that inventories "must be taken
where the business consists of buying and selling com-
mercial commodities" (Article 120), and in Article 126, in
defining the word "paid" it was flatly stated: "If the
amount involved represents an actual expense or element
of cost in the production of the income of the year, it will
be properly deductible even though not actually disbursed
in cash, provided it is so entered on the books of the
company as to constitute a liability against its assets."
But again, so far as taxes were concerned, Regulations 33
(Revised), in Article 191 thereof, permitted as a deduction
for taxes only such taxes as were "paid within the year."

It is evident from the foregoing that the so-called cash
or receipts and disbursements basis used under the 1909
and 1913 Acts and recognized at least for a time under
the 1916 Act, was not and never had been a literal cash
basis. It was in reality a mongrel basis which had taken
shape on account of the very necessities of the case and
which after adoption had received Congressional sanction
by the subsequent re-enactment of similar provisions of
law. This statutory cash basis was consistently recog-
nized and employed by the Treasury Department in

administering the several income tax acts until the issuance in January, 1921, of the opinion of the Solicitor of Internal Revenue known as L. O. 1059 (see Cumulative Bulletin 4, p. 147), the opinion upon which the Commissioner acted in disallowing the deduction for taxes and which gave rise to the instant case, an opinion which constituted an entire reversal of the Treasury's prior practice in treating the deduction for taxes.

Under the 1916 Act only taxes actually paid within the year were deductible in determining taxable net income, whether the tax returns were made on the so-called cash basis under §§ 10 and 12(a), or under the alternative basis contemplated in § 13(d). By the express provisions of the 1916 Act, that which is subject to tax is "net income," and "net income" must be determined by deducting from "the gross amount of its income received within the year" certain arbitrary deductions. One of these deductions, among others, is "taxes paid within the year imposed by the authority of the United States or its territories." All indications are that Congress intended to limit the deduction for taxes in any particular year to an amount not exceeding that actually paid within the year. Congress again employed the word "paid," and "paid" alone, in describing the allowable deductions for taxes. The re-enactment by Congress of provisions similar to those employed in an earlier Act which had received a certain construction by the Executive Department charged with the administration of the Act "amounts to an implied recognition and approval of the executive construction of a statute." *National Lead Co.* v. *United States,* 252 U. S. 140.

Whatever may be the effect of the appearance of § 13(d) in the 1916 Act, there is no warrant in law for imputing to Congress an intent to permit or require the deduction of taxes in any taxable period other than that in which such taxes were actually paid. That Congress

was familiar with the word "accrued" is evidenced by the phraseology used in the Munitions Tax law, which was Title III of the Revenue Act of 1916, § 302. Had Congress intended the word "paid" in § 12(a) of the 1916 Act to mean "paid or accrued," it would have said so. In the relative provision of the 1918 Act, namely, § 234(a) (3), Congress did say so, for that Act permitted the deduction of taxes "paid or accrued within the taxable year." To permit or require under the 1916 Act the deduction of taxes when accrued rather than when paid would be to impute to Congress an intent in enacting the 1916 Act to which it first gave expression in the 1918 Act. This is not to be done. *Shwab* v. *Doyle,* 258 U. S. 529; *Brilliant Coal Co.* v. *United States,* 59 Ct. Cls. 481. The proposition that § 13(d) sets up a separate and distinct method of reaching taxable income is a strain upon its language, quite aside from the fact that its very position in the Act as a minor section can hardly justify giving it such dignity. Obviously Congress did not contemplate that a taxpayer, regardless of the limitations imposed in § 12(a) upon the extent of the deductions for interest and taxes authorized, might, nevertheless, take as a deduction an amount of interest or taxes merely by the simple device of setting up on its books a reserve for interest or taxes. Such a construction would put it in the power of the taxpayer to take as a deduction from net income an amount of taxes or interest which Congress said specifically in § 12(a) could not be so taken. It is arguable that § 13(d) to a limited extent contemplated the so-called "accrual" system of accounting and that Congress by inserting that section in the 1916 Act intended to give express recognition and legislative sanction to the practice which had grown up under the earlier Acts by administrative regulation of permitting and even requiring the use of accounts receivable in determining gross income, and accounts payable in reaching deduc-

tible business expenses. In fact, it may be that the insertion of § 13(d) in the 1916 Act foreshadowed the decision of this Court in *Doyle* v. *Mitchell Bros. Co.*, 247 U. S. 179, in the sense that it was an express recognition by Congress of the necessity of subtracting from gross income the cost of earning gross income in reaching that " income " which alone is taxable under the Constitution. But it is hardly conceivable that § 13(d) authorized deductions for such items as taxes and interest without regard to the specific limitations placed on such deductions in § 12(a). It is true that the right to employ § 13(d) is made subject to regulations issued by the Commissioner of Internal Revenue with the approval of the Secretary of the Treasury, but an interpretation of § 13(d) which would permit, under appropriate regulation, deductions for interest and taxes other than those specified in § 12(a) would vest in the Executive branch of the Government a discretion clearly not intended, and one which would perhaps amount to an unconstitutional delegation of authority. The fact is that § 13(d) was not a recognition of the so-called accrual system of accounting as the Treasury would have us believe, but contemplated a great variety of methods of accounting. The words " accrue " or " accrual " are nowhere used in the law. It is respectfully submitted that § 13(d) represented the first step by Congress, though a cautious one, toward a recognition of the principle that there are a number of corporations, which, on account of the nature of the business in which they are engaged, employ a variety of accounting methods not adapted to making returns upon the so-called statutory cash basis, and that in such cases a return on the basis upon which the accounts are kept will more clearly reflect income than a return on the statutory cash basis.

The regulations issued under § 13(d) preclude the deduction of the 1916 munitions tax in 1916. T. D. 2433. In the last paragraph of this regulation its application is

limited by the following provision: "The reserves contemplated by the foregoing rule are those reserves only which are set up to meet some actual liability incurred, the amount necessary to discharge which cannot at the time be definitely determined." This language leaves the reserve for taxes established by this taxpayer outside the bounds of the Treasury Decision, since the munitions tax here involved was not an actual liability at December 31st, 1916. Taxes constitute a liability only when they become due or at the earliest when they are assessed. *Lane County* v. *Oregon*, 7 Wall. 71; *Meriwether* v. *Garrett*, 102 U. S. 472. That T. D. 2433 was not intended to permit taxpayers to deduct reserves for taxes is indicated not only by the contemporaneous action of the Commissioner, but also by the specific provisions of T. D. 2490, issued January 2, 1918, nearly a year after T. D. 2433, under which Treasury Decision taxes deductible were without qualification described as "taxes paid within the year."

The appellees' munitions tax for 1916 did not accrue until 1917, in which year it was first assessed, became due and payable, and was in fact paid, and consequently it was properly deducted from income for that year. *United States* v. *Woodward*, 256 U. S. 632. *Clapp* v. *Mason*, 94 U. S. 589; *Mason* v. *Sargent*, 104 U. S. 689; *Sturges* v. *United States*, 117 U. S. 363. The fact is that the uncertainties attending the computation of the munitions tax in 1916 which could only be resolved by future events, were at least as many and as great as in the case of the ordinary estate tax. Moreover, there was always the possibility that the law would be changed before the tax became due. There is no analogy between taxes and expenses. *Meriwether* v. *Garrett*, 102 U. S. 472; *Schuster* v. *Williams*, 283 Fed. 115.

The Burton-Richards Company made its returns for 1916 and 1917, not under the alternative provisions of §

13(d), but under the provisions of §§ 10 and 12(a). That being the case, there can be no dispute that its 1916 munitions tax was deductible in 1917, the year when it was paid.

*Mr. Louis H. Porter,* with whom *Mr. F. Carroll Taylor* was on the brief, for appellee in No. 420.

I. Under the Revenue Acts of 1916 and 1917 only taxes actually paid within the taxable period could be deducted in determining taxable net income.

The specific language of § 12a permits only the deduction of taxes " paid within the year."

Under the 1909, 1913, and 1916 laws the clause allowing the deduction of taxes was substantially the same and, since under the earlier acts the Treasury adopted a construction permitting only the deduction of taxes actually paid, although permitting the deduction of business expenses accrued but not paid, Congress, in using the same clause in the 1916 Act, intended to adopt the former departmental construction. *United States* v. *Cerecedo Hermanos y Compania,* 209 U. S. 337; *United States* v. *G. Falk & Bro.,* 204 U. S. 143.

The subsequent change of this clause in the 1918 Revenue Act to permit the deduction of taxes " paid or accrued during the taxable year " amounts to a Congressional construction that the prior act did not intend the deduction of taxes " accrued." *Tiger* v. *Western Investment Co.,* 221 U. S. 286; *Sarlls* v. *United States,* 152 U. S. 570.

Sec. 13d of Part II, Title I of the 1916 Revenue Act which permitted returns to be made on the basis of the corporate books, under the direction of the Treasury, where the books were kept on other than a receipt and disbursement basis, was merely a recognition of a privilege which had in fact been extended by the Treasury under the 1909 and 1913 acts and serves only to confirm the prior departmental construction permitting deduction of

accrued business expenses but only deduction of taxes actually paid.

II. The munit. an manufacturers tax did not accrue until the year in which it was due and payable.

III. The contention that appellee's accounting practice of setting up a tax reserve at the end of 1916 required its tax for the years 1916 and 1917 to be computed on the basis of such tax reserves, instead of on the basis of taxes actually paid, involves impossible inconsistencies.

Consistency and certainty in fiscal acts are of universal importance. *Comm'rs. of Inland Revenue* v. *Harrison*, L. R. 7 H. L. 1.

The Government's contention is unsound and inconsistent in that it substitutes a rule of accounting to determine when a tax "accrues" in place of a legal definition. *United States* v. *Merriam*, 263 U. S. 179.

Where there is ambiguity in the language of a taxing statute the taxpayer is entitled to the benefit of the doubt. *United States* v. *Wigglesworth*, Fed. Cas. No. 16690; *Gould* v. *Gould*, 245 U. S. 151; *Shwab* v. *Doyle*, 258 U. S. 529.

The right to deduct taxes "paid within the year" is specifically given by § 12a, while § 13d does not definitely or clearly vary the specific language of § 12a. *The Dollar Savings Bank* v. *United States*, 19 Wall. 227.

MR. JUSTICE STONE delivered the opinion of the Court.

The appellees in both cases brought suit in the Court of Claims to recover payments of corporate income taxes alleged to have been erroneously exacted. From judgments in their favor the Government brings the cases to this court on appeal. Jud. Code, § 242, before amendment of 1925.

For the purpose of discussing the main question raised by both appeals, No. 420 will first be considered, and such

additional questions as are involved in No. 337 will then be taken up.

The appellee, Yale & Towne Manufacturing Co., a Connecticut corporation, was, in 1916, engaged in the manufacture of munitions. The tax imposed by the United States on the profits on munitions manufactured by it and sold during that year, became due and was paid in 1917. In making its return for income tax for the year 1917, the appellee deducted from its gross income the amount of the munitions tax thus paid. Later the Commissioner of Internal Revenue held that the munitions tax paid in 1917 should have been deducted from the appellee's gross income in its return for 1916. There was in consequence an adjustment of the income taxes payable in those years, resulting in a net increase of the tax payable for the year 1917 of $116,044.40, which was assessed and paid under protest and is the amount for which suit was brought.

The correctness of the determination of the Commissioner depends upon the construction of the Revenue Act of 1916 and its application to the particular method employed by the taxpayer in keeping its books of account and in making return for income tax for 1916. The pertinent provisions of the statute are sections 10, 12(a), 13(a) and (d) and 300 of the Revenue Act of 1916 (c. 463, 39 Stat. 756, 765, 767–8, 770–1, 780–1). The Act imposes a tax on net income and profits ascertained as provided by § 12(a)., by deducting from gross income, expenses paid, losses sustained, interest and taxes paid during the calendar year. Section 13(d) however, provides that:

"A corporation . . . keeping accounts upon any basis other than that of actual receipts and disbursements, unless such other basis does not clearly reflect its income, may, subject to regulations by the Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury, make its return upon the basis upon which its

accounts are kept, in which case the tax shall be computed
upon its income as returned . . . ."

In the year 1916 the appellee set up on its books of
account all the obligations or expenses incurred during
the year whether they fell due and whether they were
paid during that year. It entered in an account, "re-
serves for taxes," items of various kinds of taxes, liability
for which was incurred by reason of its operations for that
year, whether paid or payable during the year. Included
in the reserves for taxes for 1916 were items aggregating
$247,763.19 for taxes on profits from the sale of munitions
during the year. The return for the munitions tax was
made by the appellee in 1917, and the tax, after revision
and an additional assessment, was paid in 1917, the year
when it was due.

In making up its income tax return for 1916, appellee
deducted from gross income all the items appearing on its
books as losses sustained and obligations and expenses in-
curred during the year, except that it omitted from the
return the items of munitions tax, likewise carried on its
books, as an obligation or expense incurred or accrued in
the year.

It is urged by the Government that the appellee, not
having kept its books or made its tax return on the basis
of receipts and disbursements, has elected to avail itself
of the privilege afforded by § 13(d) of making its return
on what was referred to in the briefs and arguments as
" the accrual basis "; that having so elected, it is required
consistently to deduct from gross income all items ap-
pearing on its books as expenses accruing or incurred dur-
ing the taxable year, including its reserve for munitions
taxes, whether payable or not.

It is not denied by the appellee that its method of keep-
ing its accounts and setting up a reserve for munitions
taxes reflected its true income for 1916 or that its amended
return on that basis accurately reflects its income and

profits for the year.   But it contends that the munitions
tax was deductible only in 1917 because under the Rev-
enue Act of 1916 only taxes actually paid during the year
were deductible in determining net income for the year;
and that in any case the provisions of that Act and the
regulations made by the Commissioner, authorizing the
taxpayer to make his returns on an " accrual" basis if his
books are so kept, could have no application to tax deduc-
tions, since a tax does not accrue until it is due and
payable.

While § 12(a) taken by itself would appear to require
the income tax return to be made on the basis of actual
receipts and disbursements, it is to be read with § 13(d)
which we have quoted and which obviously limits in some
respects the operation of § 12(a) by providing in sub-
stance that a corporation keeping its books on a basis
other than receipts and disbursements, may make its
return on that basis provided it is one which reflects
income.

Standing by themselves and taken at their face value,
these sections would seem to require the taxpayer to make
its return on the basis of receipts and disbursements or,
in the alternative, on the basis of its own books of account
if they reflect true income, under such regulations as the
Commissioner may make, and indeed to require the latter
alternative if the taxpayer is unable to make a return
except on that basis.

So interpreting the statute, the Commissioner, with the
approval of the Secretary of the Treasury, on January 8,
1917, before appellee made its income tax return for 1916,
promulgated Treasury Decision 2433 which provides in
part that under § 13(d) it " will be permissible for cor-
porations which accrue on their books monthly or at other
stated periods amounts sufficient to meet fixed annual or
other charges to deduct from their gross income the
amounts so accrued, provided such accruals approximate

as nearly as possible the actual liabilities for which the accruals are made, and provided that in cases wherein deductions are made on the accrual basis as hereinbefore indicated, income from fixed and determinable sources accruing to the corporations must be returned, for the purpose of the tax, on the same basis." It also provided in substance that when the taxpayer, following a consistent accounting practice, sets up reserves to meet liabilities, the "amount of which or date of maturity" is not definitely determinable, such reserve may be deducted from gross income. The decision also laid down a procedure for readjusting such reserves when the amount actually required for that purpose was definitely ascertained, and provided that if returns upon this basis of "accrual or reserves" did not reflect true net income, the taxpayer would not be permitted to make its return on any other basis than that of "actual receipts and disbursements."

We think that the statute was correctly interpreted by the Commissioner and that his decision referred to was consistent with its purpose and intent.

The Revenue Acts of 1909 and 1913 authorized a method of computing the income of corporations, which did not differ materially from that provided by § 12(a) of the Act of 1916. They required in terms that net income should be ascertained by deducting from gross income received, interest, expenses and taxes actually paid and losses actually sustained, but contained no provision corresponding to § 13(d) of the Act of 1916 by which a return might be made on the basis of the taxpayer's books of account. Corporation Excise Tax, Act of August 5, 1909, c. 6, § 38, 36 Stat. 11, 112; Corporation Income Tax, Act of October 3, 1913, c. 16, Section II, subdiv. G, 38 Stat. 114, 172.

It was pressed upon us in argument by appellees that it was found impracticable to comply strictly with the

requirements of the 1909 and 1913 Acts for computing income on the basis of receipts and disbursements and that under both acts the administrative practice was established, by appropriate Treasury regulations, permitting the use of inventories and authorizing deduction of expenses constituting a liability of the taxpayer, whether paid or not, in ascertaining net income, but that those regulations did not permit the deduction of taxes except in the year when paid. From this it is argued that Congress, by reënacting in § 12(a) of the Act of 1916 the corresponding provisions of the earlier acts, adopted the settled administrative practice, and that accordingly under that act, as well as under the earlier acts and Treasury regulations, taxes could be deducted only in the year when paid.

This argument would have force had Congress stopped with the enactment of § 12(a). By thus adopting, without material change, the corresponding provisions of earlier acts, Congress might have been deemed to have recognized and adopted the established practice of the Department interpreting and applying them. *National Lead Co.* v. *United States,* 252 U. S. 140. But, in the Act of 1916, Congress added § 13(d), which did not have its counterpart in earlier legislation. This section went further than any previous regulation by authorizing the tax return to be made on the basis on which the taxpayer's books were kept, provided only that the basis was one reflecting income and the return complied with regulations made by the Commissioner.

Treasury Decision 2433, to which reference has been made, was in harmony with this view of § 13(d). It recognized the right of the corporation to deduct all accruals and reserves, without distinction, made on its books to meet liabilities, provided the return included income accrued and, as made, reflected true net income. If the return failed so to reflect income, the regulation reserved

the right of the Commissioner to require the return to be made on the basis of receipts and disbursements.

A consideration of the difficulties involved in the preparation of an income account on a strict basis of receipts and disbursements for a business of any complexity, which had been experienced in the application of the Acts of 1909 and 1913 and which made it necessary to authorize, by departmental regulation, a method of preparing returns not in terms provided for by those statutes, indicates with no uncertainty the purpose of §§ 12(a) and 13(d) of the Act of 1916. It was to enable taxpayers to keep their books and make their returns according to scientific accounting principles, by charging against income earned during the taxable period, the expenses incurred in and properly attributable to the process of earning income during that period; and indeed, to require the tax return to be made on that basis, if the taxpayer failed or was unable to make the return on a strict receipts and disbursements basis.

The appellee's true income for the year 1916 could not have been determined without deducting from its gross income for the year the total cost and expenses attributable to the production of that income during the year. The reserve for munitions taxes set up on its books for 1916 must have been deducted from receivables for munitions sold in that year before the net results of the operations for the year could be ascertained. The taxpayer being unable to make its return on a strict receipts and disbursements basis, and not having attempted to do so, could not have complied with § 13(d) and Treasury Decision 2433 by deducting either accruals of interest or expenses alone without the other, or without deducting other reserves made on its books to meet liabilities such as the munitions tax, incurred in the process of creating income.

Only a word need be said with reference to the contention that the tax upon munitions manufactured and

sold in 1916 did not accrue until 1917. In a technical legal sense it may be argued that a tax does not accrue until it has been assessed and becomes due; but it is also true that in advance of the assessment of a tax, all the events may occur which fix the amount of the tax and determine the liability of the taxpayer to pay it. In this respect, for purposes of accounting and of ascertaining true income for a given accounting period, the munitions tax here in question did not stand on any different footing than other accrued expenses appearing on appellee's books. In the economic and bookkeeping sense with which the statute and Treasury decision were concerned, the taxes had accrued. It should be noted that § 13(d) makes no use of the words " accrue " or " accrual " but merely provides for a return upon the basis upon which the taxpayer's accounts are kept, if it reflects income— which is precisely the return insisted upon by the Government. We do not think that the Treasury decision contemplated a return on any other basis when it used the terms " accrued " and " accrual " and provided for the deduction by the taxpayer of items " accrued on their books ".

*United States* v. *Woodward*, 256 U. S. 632, relied upon by appellees, arose under the Income Tax Law of 1918, (c. 18, Title II, §§ 210–214, 219, 1405, 40 Stat. 1062–1067, 1071, 1151). Section 213(a) and (e) of that Act provided that taxes " paid or accrued " within the taxable year imposed by authority of the United States, except income, war profits and excess profits taxes, might be deducted in ascertaining income. The claim of the taxpayer of the right to deduct estate taxes levied under that Act for the year when due, although paid in a later year, was upheld. It did not appear whether, as here, the taxpayer kept his books on the accrual basis or whether, as here, events had occurred before the tax became due which fixed the amount of it; for it did not appear

whether the deductions to be made from the testator's gross estate were ascertainable for the purpose of determining the estate tax. The question which we now have to determine was not raised, considered or decided in that case.

We conclude that the reserves for taxes which appeared on appellee's books in 1916 were deductible under § 13(d) of the Act of 1916 and Treasury Decision 2433 in its income tax return on the accrual basis for that year.

It was argued in behalf of the appellees in No. 337 that the taxpayer did not keep its books on an accrual basis; that consequently its case was not controlled by § 13(d) and Treasury regulations made under it, and that by § 12(a) it was authorized to deduct the amount assessed for munitions taxes only in 1917, the year when paid. On this point we are concluded by the findings. They show that in the year 1916 the taxpayer accrued on its books expenses, whether paid or not, including " insurance reserves," " freight reserves," " bonus reserves," and depreciation charged off, aggregating more than two and a half million dollars, which it deducted from accrued gross income, whether actually received or not, in making its income tax return for the year. It charged on its books and deducted in its income tax return, interest accrued and paid during the year. So far as appears no other interest accrued during the year and there was no reserve for interest. No charge or deduction was made for bad debts. It also set up on its books for that year a monthly reserve of $35,000 for the payment of munitions taxes beginning with September, the month of the passage of the Revenue Act of 1916 taxing munitions. On December 31, 1916, this reserve account was closed out and a charge was made on its books against the corporate surplus for account of munitions taxes of $86,541.95. No deduction was made by the taxpayer for munitions taxes in its income tax return for the year 1916. In 1917 the

munitions tax was returned and ultimately assessed and paid in the sum of $112,419.54.

Since the suit was one to recover a tax erroneously exacted, the burden was on the petitioners, appellees here, to prove the facts establishing the invalidity of the tax. But the findings fail to show affirmatively that the books were kept or the return made on the basis of receipts and disbursements. Indeed, the facts found, to which we have referred, show that the books were kept on the basis of accruals and reserves to meet liabilities incurred. It does not appear that there was any expense or liability of the taxpayer incurred by its operations during the year which was not accrued on its books. Its return was made on that basis, but omitted munitions taxes accrued on its books during the year for which the return was made. We think these facts bring the case clearly within the principle which we deem to be applicable to No. 420. The judgment of the Court of Claims in each case is

*Reversed.*

MR. JUSTICE SUTHERLAND and MR. JUSTICE SANFORD dissent.