TEXAS COCA-COLA BOTTLING COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 54177. Promulgated May 16, 1934.

*Llewellyn A. Luce, Esq.*, for the petitioner.
*P. A. Bayer, Esq.*, for the respondent.

### OPINION.

ADAMS: The respondent determined a deficiency in income tax of $541.13 against the petitioner for the period March 1 to December 31, 1928. The deficiency arises from the disallowance by the respondent of certain deductions for taxes claimed by the petitioner. The taxes were real estate taxes for the year 1928 due the State of Texas and its governmental subdivisions and amounted to $3,859.26. They were paid during the taxable year 1928.

The facts were stipulated and the stipulation is adopted as our findings of fact.

The material portions of the stipulation are as follows:

1. The Petitioner Corporation was organized under the laws of the State of Texas, on March 1st, 1928, with a paid in Capital Stock of $100,000.00, and is engaged in the business of bottling and distributing Coca Cola, and

was so engaged from the time of its organization March 1st, 1928, to and including December 31st, 1928.

2. Petitioner Corporation was the result and product of the incorporation of four partnerships, which were in existence on January 1st, 1928, and had been in existence during the year 1927 and for several years prior thereto. These partnerships were, during their years of existence, in the business of bottling and distributing Coca Cola. The said Partnerships were as follows: Texas Coca-Cola Bottling Co., Abilene, Texas; Coca-Cola Bottling Co., Eastland, Texas; Dublin Coca-Cola Bottling Co., Dublin, Texas; Sweetwater Coca-Cola Bottling Co., Sweetwater, Texas.

3. [The stipulation here sets out the respective holdings of partnership interests by the individual partners.]

4. During the early part of the year 1928 the partners composing the four above mentioned partnerships decided to unite the four partnerships and to incorporate them. This plan was carried out, and the Petitioner Corporation was formed. Stock in the Petitioner Corporation was issued to the members of the aforesaid partnerships, in exchange for the assets thereof, which consisted of both real and personal property. At the time of the incorporation the assets of the Petitioner Corporation were set up on the same basis that they were carried on the partnership books, which created the following Capital and Surplus of the Petitioner Corporation:

| | |
|---|---|
| Capital Stock | $100,000.00 |
| Surplus | 108,923.75 |
| Total Assets | $208,923.75 |

5. [This paragraph of the stipulation shows the number of shares issued to each of the stockholders.]

6. During the months of November and December, 1928, the Petitioner Corporation paid the following taxes payable in 1928: [Here is set out a list of taxes paid by petitioner totaling the amount of $3,859.26.]

7. These taxes were based upon real estate owned by the four partnerships on January 1st, 1928. Said real properties were acquired by the Petitioner Corporation on March 1st, 1928, and said Petitioner Corporation held said properties throughout the balance of the year 1928, and used said properties in its business during that period of time. The same real properties were owned, prior to the incorporation, by the four partnerships which united to form the Petitioner Corporation. On January 1st, 1928, the said real properties were held in the name of the four partnerships named hereinafter.

8. The City, School, State and County taxes on the said real properties payable in the year 1927, were paid by the four partnerships.

9. In its income tax return for the period March 1st to and including December 31st, 1928, the Petitioner Corporation claimed as a deduction the sum of $3,859.26, representing the aforesaid City, School, State and County taxes paid by the Petitioner Corporation during the months of November and December, 1928.

10. This deduction was disallowed by the Respondent on the theory that the sum of said taxes represented additional cost of the properties taken over by the Corporation from the partnerships, and was not an ordinary and necessary business expense of Petitioner Corporation.

11. It is agreed between parties hereto that the Board may take judicial notice of the statutes of the State of Texas, regarding liability for the pay-

ment of State, County, School and City taxes, and the assessment and payment thereof.

We have for determination the sole question as to whether one acquiring real property in the State of Texas on March 1, 1928, may take as a deduction from its income tax return for that year taxes paid to the state and its subdivisions on such property as an ordinary and necessary business expense.

Petitioner's specification of error is as follows:

The failure of the Commissioner to find that the payment of City, County, State and School taxes in the amount of $3,859.26 in taxable period covered by this appeal by petitioner was an allowable deduction from gross income.

In support of its assignment of error, petitioner asserts that the partnership here involved united to form the petitioner corporation; that the petitioner in all its ordinary business occupied the same position as the partnership; that the assets of petitioner were set up on its books on the same basis as carried on the partnership books; that there was no gain or loss to the members of the partnership upon the transfer of their assets in the organization of the petitioner corporation for the reason the members of the partnership were in control of the partnership immediately after the exchange.

In support of these propositions, petitioner cites *Western Maryland Ry. Co.* v. *Commissioner*, 33 Fed. (2d) 695, in which case it was held by the Circuit Court of Appeals for the Fourth Circuit that a railroad company might deduct in its income tax returns an amortized portion of the bond discount arising upon the sale of bonds by a predecessor corporation which had formerly owned the railroad. In that case, the respondent based his denial of such deductions primarily upon the fact that a distinct and separate entity had been created as a result of the consolidation of the Western Maryland Railway Co. with other corporations. The court held that while there was a technical legal difference between the old and the new corporations, they were the same as a practical matter, both holding the same property and representing the same ownership, and it further declared it is a settled principle that courts will not permit themselves to be blinded or deceived by mere forms of law, but, regardless of fictions, will deal with the substance of the transaction involved as if the corporate agency did not exist and as the justice of the case may require.

Petitioner further cites the case of *Paradox Land & Transport Co.*, 23 B.T.A. 1229, which held that where partners sold assets of a partnership to a corporation receiving in payment therefor the common stock of the corporation and were immediately in control of more than 80 percent of all outstanding voting stock of the corporation, and there was no preferred stock outstanding at that time, the basis of cost of such assets to the corporation in determining

the profit on a subsequent sale of such assets is their cost to the partnership from which the purchase was made.

In our opinion, the cases relied upon by the petitioner are not controlling here. Those cases were dealing primarily with the question of gain or loss and the proper basis for determining such gain or loss. In the instant case, the question is whether the taxes paid are an allowable deduction under the statute.

Section 23 of the Revenue Act of 1928 provides:

In computing net income, there shall be allowed as deductions:

*        *        *        *        *        *        *

(c) *Taxes Generally.*—Taxes paid or accrued within the taxable year except * * *.

This provision of the statute has often been construed to apply only to taxes accrued within the taxable year, such taxes being those due by the taxpayer and for which it is primarily liable. Cf. *Charles R. Holden,* 27 B.T.A. 530; *First Bond & Mortgage Co.,* 27 B.T.A. 430; *Benjamin I. Powell,* 26 B.T.A. 509; *National Casket Co.,* 29 B.T.A. 139.

It is settled that the owner of property on the date the tax is assessed and becomes due is the taxpayer with respect to such taxes and that such owner is primarily liable for the same. In the event such owner conveys the property after that date and during the taxable year, the taxes so accrued are his taxes and not those of his vendee. The vendee takes the property subject-to the lien against it for such taxes and it becomes to him a part of the cost of such property.

The question here is controlled by the statutes of the State of Texas, from which it appears that in that state all property must be listed for taxation between January 1 and April 30 of each year when required by the assessor with reference to the property held or owned on the 1st day of January in the year for which it is required to be listed or rendered. Any property purchased or acquired on the 1st day of January shall be listed by or for the person purchasing or acquiring it. Each assessor of taxes is required between the 1st day of January and the 30th day of April of each year to proceed to take a list of the taxable property in his county and assess the value thereof. The assessor is required prior to the first Monday in June or as soon thereafter as practicable to submit to the board of equalization for his county for inspection, approval, correction, or equalization all the lists of property rendered to him. After the approved list is returned to the assessor he is required to make a roll or book, as required by the comptroller, from the corrected list. On or before August 1 he must submit this roll or assessment book to the county board of equalization. After the board of equalization has returned the roll or assessment book, a copy

thereof must be delivered to the tax collector. On or before October 1, or as soon thereafter as the collector is able to obtain the assessment roll or book, he is required to begin the collection of taxes. (Revised Civil Statutes of Texas, 1925, title 122, ch. 6, art. 7151; ch. 7, arts. 7189, 7218, 7219, 7222, and 7224; ch. 8, art. 7255.)

In the case of *Winters* v. *Independent School District of Evant*, 208 S.W. 574, it was held by the Texas Court of Civil Appeals that the " ownership of property on the 1st day of January of any year creates a liability on the part of the owner for taxes levied upon such property for that year."

In *United States* v. *Anderson*, 269 U.S. 422–433, the United States Supreme Court said:

In a technical legal sense it may be argued that a tax does not accrue until it has been assessed and becomes due; but it is also true that in advance of the assessment of a tax, all the events may occur which fix the amount of the tax and determine the liability of the taxpayer to pay it.

The ownership of property in Texas on January 1 is the *event* which determines the liability for property taxes and fixes the amount, although not ascertainable on that date. (See G.C.M. 6272, VIII–1, p. 170.)

We hold that the taxes in question accrued and became a lien on the property conveyed to the petitioner on January 1, 1928, and that petitioner, having acquired the property on March 1 of that year, took it subject to the tax lien, and that the expenditure for the payment of such taxes became a part of the cost of the property to petitioner and is, therefore, not deductible under the statute. Cf. *Grand Hotel Co.*, 21 B.T.A. 890; *Leamington Hotel Co.*, 26 B.T.A. 1004; *First Bond & Mortgage Co.*, 27 B.T.A. 430.

The determination of the respondent is affirmed.

*Judgment will be entered for the respondent.*