S. E. & M. E. BERNHEIMER CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 88978. Promulgated February 1, 1940.

*Wilbur H. Friedman, Esq.*, for the petitioner.
*F. S. Gettle, Esq.*, for the respondent.

250

OPINION.

·Van Fossan: The statutory provisions covering the liability for the payment of real estate taxes in New York City here involved, as set forth in chapter 17 of the Charter of the City of New York, as

amended by the Laws of New York, 1935, chapter 713, appear below.[1]

The first issue in the case is whether certain taxes on real estate owned by the petitioner and situated in New York City are properly accruable on October 1, 1935, as asserted by the respondent, or within the petitioner's fiscal year which ended on September 30, 1935, as contended by the petitioner.

The Board has held in certain cases that taxes accrue on the date when they become a lien on the property. See *Minnie M. Coward*, 39 B. T. A. 1158, and cases there cited. This is not, however, a test of universal applicability. *Henry J. Burchell, Jr., Executor*, 41 B. T. A. 55. In the last cited case it was held, under a statute which made no specific provision for a lien but which provided that "all taxes on the tax roll shall be due and payable on the date of the warrant annexed thereto", that the annexing of the warrant was the event which fixed the amount of the tax and determined the liability of the taxpayer to pay it in accord with the principles an-

---

[1] Sec. 895: The taxable status of all real property assessable for taxation in the City of New York shall be fixed for the succeeding fiscal year on the first day of October in each year; * * *.

Sec. 896: * * * Such deputies [tax commissioners] shall commence to assess real estate on the first day of April in each year, not a Sunday or legal holiday.

* * * * * * *

Sec. 908: As soon as such rolls are completed the board shall annex to each of such rolls its certificate that the same is correct in accordance with the entries and corrected entries in the several books of annual record. The rolls so certified must, on the first day in March in each year, not a Saturday, Sunday or a legal holiday, be delivered by the board of taxes and assessment to the board of aldermen, * * *.

* * * * * * *

Sec. 921: The board of aldermen shall meet not later than the third day in March which is not a Saturday, Sunday or a legal holiday, to fix the annual tax rate. * * *

Sec. 922: At such annual meeting the board of aldermen must set down in the assessment-rolls, opposite to the several sums set down as the valuation of real property, the respective sums, in dollars and cents, to be paid as a tax thereon, rejecting the fractions of a cent. * * *

Sec. 923: Immediately upon the completion of the assessment-rolls, the city clerk shall procure the proper warrants authorizing and requiring the city collector to collect the several sums therein mentioned according to law and to pay the same from time to time, when so collected, to the chamberlain of the city. * * * immediately thereafter and on or before the twentieth day of March, the assessment-rolls * * * shall be delivered by the president of the board to the city collector with the proper warrant or warrants * * * annexed thereto.

Sec. 924: All taxes upon real estate for each of the years nineteen hundred thirty-five and nineteen hundred thirty-six shall be due and payable in two equal installments, the first of which shall be due and payable on the first day of April in such year and the second of which shall be due and payable on the first day of October in such year. * * *

All taxes shall be and become liens on the real estate affected thereby and shall be construed as and deemed to be charges thereon on the respective days when they become due and payable and not earlier and shall remain such liens until paid.

Any installment of taxes on real estate which is due and payable on any date subsequent to the date upon which the first installment shall become due and payable, may be paid on the date when the first installment becomes due and payable or at any time thereafter provided all prior installments shall have been paid or shall be paid at the same time, and on such payment of such subsequent installment prior to the date upon which it becomes due and payable, a discount shall be allowed from the date of payment to the date when such installment would otherwise be due and payable at the rate of four per centum per annum.

nounced in *United States* v. *Anderson*, 269 U. S. 422. In the *Anderson* case the Supreme Court observed:

Only a word need be said with reference to the contention that the tax upon munitions manufactured and sold in 1916 did not accrue until 1917. In a technical legal sense it may be argued that a tax does not accrue until it has been assessed and becomes due; but it is also true that in advance of the assessment of a tax all the events may occur which fix the amount of the tax and determine the liability of the taxpayer to pay it. In this respect, for purposes of accounting and of ascertaining true income for a given accounting period, the munitions tax here in question did not stand on any different footing than other accrued expenses appearing on appellee's books. In the economic and bookkeeping sense with which the statute and Treasury decision were concerned, the taxes had accrued.

The statutes here involved provide for the delivery to the board of aldermen on March 1 of the certified assessment rolls, the fixing by the board of the tax rate, the extension of the amounts to be paid, and the delivery to the city collector on or before March 20 of the assessment rolls, with collection warrants annexed. They further provide that all taxes upon real estate for 1935 and 1936 shall be due and payable in two installments, respectively, April 1 and October 1, and that such taxes shall be and become liens on the respective days when they become due and payable and not earlier, provided, however, that if there be no delinquent taxes a taxpayer may anticipate later payments and pay any subsequently due payment at the time of making the first payment, or at any time prior to October 1, and receive a discount thereon. It is stipulated as a fact that the tax bills are sent to the taxpayers during the month of March.

In the light of these statutory provisions, certain conclusions emerge. It is obvious that before the end of March when the tax bills are sent out all the events "which fix the amount of the tax and determine the liability of the taxpayer to pay it" have occurred, thereby satisfying the test laid down in *United States* v. *Anderson*. It is equally clear that although the second half of the taxes is not technically "due and payable" until October 1, this provision loses all force if the taxpayer elects to anticipate the due date and pay the second half before October 1. From this it also follows that the fact that a lien for the second half does not attach until October 1, can not in this case be controlling. If a taxpayer paid the second half of his taxes before October 1, no lien would ever attach.

Turning to the facts, we find that the taxes due from petitioner on October 1, for the period July 1 to September 30, 1935, as to property involved in the first issue had been finally fixed and determined in March. Taxpayer had received official notice of the same in the form of a bill from the collector, dated March 26, 1935. The tax bill, on its face, carried notices of the right to anticipate payment. Though

they were not technically due until October 1, petitioner, in the light of the facts, accrued them on its books prior to that date. This action we believe to have been proper and to have been in accord with the principles of accrual accountancy. See *United States* v. *Anderson, supra.* On this point we reverse the Commissioner.

Passing to the second issue involving taxes on the 255 West 88th Street property, we find the facts to argue even more strongly for the taxpayer. The deduction of the taxes here in question was approved by the respondent in his notice of deficiency, claim of error therein being asserted in the amended answer in this proceeding. The facts are that the taxes had been officially determined and notice thereof sent to taxpayer according to the statute. Petitioner, pursuant to an arrangement with the state mortgage commission, had paid the taxes in controversy to the commission during July, August, and September and the mortgage commission had paid the same to the city collector prior to October 1. This payment was authorized by statute and forestalled the attaching of a lien. Clearly, petitioner was justified in accruing such taxes on its books prior to October 1. It was equally justified in claiming a deduction of such taxes as taxes paid or accrued during the period ending September 30, 1935. Only by such a treatment would the taxpayer's return accurately reflect income for the period in question.

In the light of the facts and the conclusion reached above, it is unnecessary to discuss petitioner's alternative contention that the taxes so paid were deductible as business expenses.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

---

LEECH, dissenting and concurring: On the first point I respectfully dissent. Taxes, like any other obligation, are accruable by a taxpayer on the accrual basis when they become "due and payable." Any other conclusion would permit the double deduction of taxes by a grantor of real estate on the accrual basis and a grantee on the cash basis—an anomalous and impossible result. The contested taxes did not become "due and payable" until after September 30, 1935. See I. T. 2834 (C. B. XIII–2, p. 189, 1934). It follows that these taxes were not accruable and, therefore, not deductible for the period ending October 1, 1935.

I concur with the result the majority reaches on the second point, on the ground that the amounts in controversy, if not deductible as taxes accrued, were so, at least, as ordinary and necessary expenses of the taxpayer.

BLACK and OPPER agree with this dissent.