DIVERSIFIED FASHIONS, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Diversified Fashions, Inc. v. Commissioner
Docket No. 3421-86
United States Tax Court
T.C. Memo 1988-239; 1988 Tax Ct. Memo LEXIS 268; 55 T.C.M. (CCH) 973; T.C.M. (RIA) 88239; May 26, 1988. Isidore Feldman, for petitioner. Victoria Wilson Fernandez and Nancy Chassman Rothbaum, for respondent. SHIELDS
MEMORANDUM FINDINGS OF FACT AND OPINION SHIELDS, Judge: Respondent determined deficiencies in petitioner's income taxes as follows: Fiscal Year Ended
Deficiency
October 31, 1974
$  11,431.22
October 31, 1975
$  28,027.30
October 31, 1977
$  63,138.28
October 31, 1978
$   4,035.98
October 31, 1979
$  51,617.28
October 31, 1980
$  68,913.00
October 31, 1981
$  87,748.00
October 31, 1982
$ 112,487.00
October 31, 1983
$ 134,163.00
*269 After concessions, the issues for decision are: (1) whether respondent is precluded from contesting petitioner's deduction in the years in dispute for interest on a certain contract because the issue was conceded by respondent in a prior year; and if not, (2) whether interest deductions claimed by petitioner, an accrual basis taxpayer, were improper because they failed to meet the "all events" test, or in the alternative, because the underlying indebtedness was structured as a tax avoidance scheme, lacked economic substance and constituted a sham. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulations and exhibits associated therewith are incorporated herein by reference. Petitioner, Diversified Fashions, Inc. (Diversified), a Delaware corporation, had its principal place of business in Bergenfield, New Jersey, at the time of filing its petition. It filed corporate income tax returns for the fiscal years ending on October 31, 1974, through October 31, 1983, using the accrual method of accounting. Diversified was organized in 1972 by Leonard Harris, Jerome Harris, and Ralph Garlin for the purpose of entering the garment or apparel business *270 although none of its original stockholders had any appreciable experience in such a business and the corporation had no assets immediately following its incorporation. On December 4, 1972, Diversified entered into a contract to purchase (Contract) all of the stock of Zum-Zum Fashions, Inc. (Zum-Zum) for Herbert Berger, Leonard Geller, and Ray Schneiderman (Sellers) who were unrelated to and had no previous business dealings with Diversified or its stockholders. The total stated purchase price for the stock was $ 3,612,500 which was payable to the individual Sellers as follows: (1) A cash downpayment of $ 312,500. (2) The balance in quarter-annual installments of $ 75,000 beginning March 31, 1973, with a balloon payment of $ 1,800,000 on January 1, 1978. (3) Interest accruing on the unpaid balance of the purchase price at the rate of eight percent per annum was to be paid in quarter-annual installments commencing three months after the final payment of principal and after the expiration of the fifth year following the execution of the Contract. With respect to the purchase and sale of the Zum-Zum stock the Sellers were represented by the law firm of Herman Simon (Simon), *271 who was also a partner in the accounting firm of Isidore Feldman & Co., which did the accounting for Zum-Zum and had prepared the financial statements attached to the Contract. Simon was also the escrow agent for the parties and, under the terms of the Contract, all of the outstanding stock in Zum-Zum was deposited with Simon as the escrow agent to secure the payments due the Sellers under the Contract. The Contract further provided that if the purchasers defaulted in the terms of payment the escrow agent was to return the Zum-Zum stock certificates to the Sellers and the Sellers were entitled to keep all funds theretofore received under the Contracts as liquidated damages. Simultaneously with the exception of the Contract, Zum-Zum entered into an employment agreement with each of the Sellers under which the Sellers retained their positions as officers and directors of Zum-Zum. As a result, there was no change in the business operations of Zum-Zum after the purchase of its stock by Diversified. At the time of the purchase Leonard Harris, one of Diversified's stockholders, understood that the payments due the Sellers under the Contract would be paid by Diversified from dividends *272 received from the profits of Zum-Zum. Mr. Simon and Herbert Berger told Ray Schneiderman that the payments due him as a Sellers under the Contract with Diversified would come from the profits of Zum-Zum. Diversified made the downpayment of $ 312,500 due under the Contract from the proceeds of a demand note for $ 350,000 given by Diversified to Bankers Trust Company on December 8, 1972. The demand note issued by Diversified to Bankers Trust Company was repaid by Diversified from the proceeds of a dividend declared by the directors of Zum-Zum on December 12, 1972. [1]
By January 1976, Diversified had paid a total of $ 950,000 of the principal payments required at that time under the Contract. Diversified had made all of the payments from dividends declared by Zum-Zum. On January 14, 1976, Diversified entered into an extension agreement with the Sellers whereby all payments of principal and interest due under the Contract were extended for a three year period. At that time the unpaid balance of principal was $ 2,350,000. The extension agreement *273 was entered into because Zum-Zum was unable to pay dividends to Diversified due to poor business conditions and the fact that Zum-Zum needed all available capital for expansion into other areas of the industry. Herman Simon represented both parties in the negotiation of the extension agreement. Mr. Simon advised both parties that the extension in his judgment was in their best interest because Zum-Zum could not continue to pay dividends sufficient in amount to cover the payments due under the Contract. On September 1, 1976, one of the Sellers, Leonard Geller, sold his one-third interest in the Contract to the two other Sellers, Herbert Berger and Ray Schneiderman, for $ 83,800. At that time the balance due under the Contract was $ 2,350,000 of principal plus all interest accrued to that date. Here again, Herman Simon represented both parties to the transaction and, during the negotiation of the sales price, discussed with the parties the financial condition of Zum-Zum, its ability to repay the obligation, and its future business prospects. On January 12, 1979, Diversified entered into a second extension agreement with the Sellers. The second agreement provided that all *274 payments of principal and interest due under the Contract would be extended for an additional eighteen months. Herman Simon also represented both parties to the second extension agreement. He encouraged both parties to enter into the agreement because Zum-Zum was financially unable to pay the necessary dividends to Diversified since Zum-Zum's business was still not doing well and all available funds were needed elsewhere. Diversified made three principal payments of $ 50,000 each in 1980 and one of $ 50,000 in 1981 with the result that on March 1, 1982, the balance due under the Contract was $ 2,150,000 in principal plus all interest accrued to that date. At that time, Herbert Berger sold his then one-half interest in the Contract for $ 275,000 to Niki Gounis, the wife of Ray Schneiderman. In the sales agreement between Herbert Berger and Niki Gounis the payments due from Diversified under the Contract were referred to as contingent payments. Although the record contains no extension beyond the one dated January 12, 1979, sporadic payments were made by Diversified from dividends received from Zum-Zum in 1984, 1985, and 1986, and by October 31, 1986, the principal amount *275 due under the Contract was reduced to $ 1,050,000. The record contains no evidence of any further payments and, as of the date of trial, the Sellers had not declared Diversified to be in default under the Contract. On December 23, 1976, respondent issued a notice of deficiency to Diversified in which it disallowed $ 255,000 in interest accrued and deducted by petitioner on the Contract for the year ended October 31, 1973, the year preceding the years in dispute in this case. Diversified filed a timely petition with this Court (Docket No. 2566-77) but prior to trial, the parties reached an agreement in which respondent conceded the interest deduction and a decision pursuant to the agreement was entered on September 12, 1978. In his statutory notices covering the years in issue in this case respondent disallowed interest deductions accrued by Diversified on the Contract as follows: Tax Year Ended
Interest Expense Disallowed
October 31, 1974
$ 208,833
October 31, 1975
$ 204,000
October 31, 1976
$ 188,000
October 31, 1977
$ 188,000
October 31, 1978
$ 188,000
October 31, 1979
$ 188,000
October 31, 1980
$ 184,931
October 31, 1981
$ 177,122
October 31, 1982
$ 173,256
October 31, 1983
$ 166,622
*276 OPINION Petitioner contends that respondent is precluded from contesting the deductibility of the interest accrued on the Contract for the years under consideration because respondent conceded that issue in favor of petitioner in the preceding year, the year ended on October 31, 1973. Petitioner argues that in reliance on respondent's concession in the prior year petitioner filed its subsequent tax returns on the same basis and that respondent is under a duty to treat petitioner consistently. Petitioner's argument, however, is without merit because on this record respondent merely acquiesced in Diversified's treatment of interest for the prior year and it is a well established principle in the field of income taxation that each year is a separate taxable unit. Commissioner v. Sunnen,333 U.S. 591 (1948). Consequently, respondent's acquiescence in the interest deduction in the prior year does not preclude respondent from raising the same issue in determining the tax liability of petitioner in later years. In other words, "an unlawful course of procedure, however prolonged, is not made lawful by acquiescence of the Commissioner." *277 Weiner Machinery Co. v. Commissioner,16 T.C. 48 (1951), quoting Commissioner v. Rowan Drilling Co.,130 F.2d 62, 65 (1942). We turn now to Diversified's claim that as an accrual basis taxpayer petitioner is entitled to deduct the interest accruing on the Contract because under the Contract its liability for the interest was clear and unequivocal and the liability for both principal and interest was absolute and subject to no conditions. Respondent argues that from the conduct of the parties with respect to the Contract as reflected by the record as a whole it is apparent that all payments under the Contract were contingent upon the profits of Zum-Zum and therefore fail to meet the "all events" test which requires that the liability be fixed and unconditional. Section 163 allows as a deduction all interest paid or accrued within the taxable year on indebtedness. Under the accrual method of accounting, an expense, including interest which is otherwise deductible, is deductible for the taxable year in which all events have occurred which determine the fact of liability and the amount of the deduction can be determined with reasonable accuracy. *278 United States v. Anderson,269 U.S. 422 (1926); section 1.461-1(a)(2), Income Tax Regs. To meet the first element of the "all events" test, the liability must be final, definite in amount, fixed, absolute, and unconditional. Consequently, a liability does not accrue as long as it remains contingent. United States v. Hughes Properties, Inc.,476 U.S. 593 (1986). If payments on an obligation are to be made solely out of the profits of a business, the liability is contingent as illustrated by the following quotation from Pierce Estates v. Commissioner,195 F.2d 475, 477-478 (3d Cir. 1952), where the Court of Appeals stated: if the liability to pay the item of expense is wholly contingent upon the happening of a subsequent event the item cannot be regarded as incurred or deductible as accrued until the year in which by the occurrence of the event the contingent liability becomes an absolute one. Because interest is compensation for the use or forbearance of money it ordinarily accrues as an item of expense from day to day even though its payment may be deferred until a later date. But this is not true if the payment is not merely *279 deferred but the obligation to pay at all is wholly contingent upon the happening of a later event as, for example, the subsequent earning of profits. In the latter case, the interest may not be regarded as an accrued expense until the year in which, by the earning of the profits, the contingency is satisfied and the obligation to pay becomes fixed and absolute. [Emphasis supplied. Fn. refs. omitted.] It is true, as contended by petitioner, that the obligation to pay interest under the terms of the Contract appears absolute. We, however, are not bound by the literal language of the Contract because "In the field of taxation, * * * courts, are concerned with substance and realities, and formal written documents are not rigidly binding." Frank Lyon Co. v. United States,435 U.S. 561, 573 (1978), quoting Helvering v. Lazaras & Co.,308 U.S. 252, 255 (1939). Therefore, we have examined all the surrounding facts and circumstances in order to determine whether petitioner's obligation to pay interest under the Contract satisfies the first element of the "all events" test. Our examination has led to the conclusion that the petitioner's obligation *280 to pay the interest was contingent upon receipt of dividends from Zum-Zum and such dividends were in turn contingent upon the future profits of Zum-Zum. Hence the obligation to pay interest fails to comply with the "all events" test for the reasons discussed below. (1) From its incorporation Diversified had no assets or means of conducting any business. Its shareholders never contributed more than a de minimis amount of capital toward its success. Even the downpayment on the purchase of Zum-Zum's stock was borrowed by Diversified and repaid almost immediately with a dividend fromm Zum-Zum. (2) All of Zum-Zum's stock was deposited with Herman Simon as escrow agent and in case of a default, the shares were to be returned to the Sellers and all funds theretofore received by them were to be retained as liquidated damages. (3) Herman Simon was not only the escrow agent but as a lawyer and/or a certified public accountant represented the parties to both sides of every pertinent transaction, including the original purchase and sale and each extension thereof as well as the two subsequent sales of the interests of two of the original Sellers. It is apparent therefore, that Mr. *281 Simon as escrow agent, lawyer, or accountant was in complete control of the entire transaction and no arms length negotiation ever occurred between the purported principals to the contract. (4) The record contains no evidence that the shareholders of Diversified had any previous experience in the garment industry or made any attempt to determine by appraisal or otherwise the reasonableness of the purchase price of Zum-Zum's stock. (5) With the use of employment contracts and the former stockholders of Zum-Zum (the Sellers under the Contract) continued to serve as officers and directors of Zum-Zum after the sale. (6) One of the Sellers under the Contract was told by Mr. Simon and Mr. Berger that payments on the Contract would be made from the profits of Zum-Zum which would be transferred to Diversified as dividends and at least some of the shareholders of Diversified understood that payments on the Contract would be made in this manner. (7) The payments of both principal and interest due under the Contract were extended on two occasions by the Sellers when Mr. Simon advised both parties that Zum-Zum was unable to pay dividends because its business was not doing well and it *282 needed to use any available funds elsewhere. (8) When Leonard Geller, one of the original Sellers, subsequently sold his one-third interest under the Contract for $ 83,800, Mr. Simon again represented both parties to the transaction and during the negotiation of the sales price, discussed with the parties the financial condition of Zum-Zum and its ability to pay the principal and interest due under the Contract. At that time the amount due on the Contract in principal alone was $ 2,350,000. (9) When Herbert Berger sold his then one-half interest under the Contract, the payments due from Diversified were labelled as contingent. Mr. Simon represented both parties and had the same discussion with them that he had with the parties to the Geller transaction. When Berger sold his one-half interest for $ 275,000, the principal on the contract was $ 2,150,000. In view of all of the foregoing we are satisfied that, despite the language of the Contract, the record as a whole clearly reflects that there was an understanding between the parties that payments would only be made on the Contract from the profits of Zum-Zum (which understanding was under the control of and enforced by Mr. *283 Simon). Therefore, since payment was contingent, petitioner is not entitled to the deductions claimed for interest. [2]
Due to concessions, Decision will be entered under Rule 155.
Footnotes
1. The parties agree that the amount, if any, of capital actually contributed to Diversified by its stockholders was de minimis. ↩
2. In view of our conclusion with respect to this issue, we need not discuss respondent's alternative argument. ↩