## APPEAL OF SANER-RAGLEY LUMBER CO.

Docket No. 431.    Submitted June 1, 1925.    Decided February 19, 1926.

1. Where a taxpayer keeps its books of account on the accrual basis and elects to make its returns for the year 1917 on that basis, the interest deduction is the amount of interest accrued within the year, and not the amount paid.

2. Interest is an expense which accrues ratably over an elapsed period of time.

3. The evidence fails to establish that the taxpayer is entitled to special relief under the provisions of section 210 of the Revenue Act of 1917. Relief granted under section 328 of the Revenue Act of 1918.

*George M. Morris, Esq.*, for the taxpayer.
*Lee I. Park, Esq.*, for the Commissioner.

Before IVINS, MARQUETTE and MORRIS.

This appeal is from the determination of a deficiency in income and profits taxes for the years 1917 and 1918 in the aggregate amount of $35,568.88, and the determination of an overassessment for the year 1919 of $24,644.01.

### FINDINGS OF FACT.

The taxpayer is a corporation, organized under the laws of Texas on October 13, 1913, with a paid-in capital of $200,000. On October 22, 1913, the taxpayer purchased a tract of 10,146 acres of timber land for a consideration of $800,000, of which $150,000 was paid in cash and the balance was payable according to the terms of 13 promissory notes in the sum of $50,000 each.

The original notes were canceled and new notes bearing date of January 22, 1914, were substituted therefor. The notes were similar in form and the material parts thereof were as follows:

$50,000.00 No. Thirteen Dallas, Texas, January 22, A. D. 1914.

In installments, at the rate of $7.00 per thousand feet, log measure, Scribner's rule, for each thousand feet of timber sawed off the lands purchased from J. M. Bemis, between the first and last day of each month, each installment payable on the 15th day of each month, next following, the undersigned promises to pay J. M. Bemis, or order, the sum of Fifty Thousand ($50,000.00) and no/100 Dollars with interest thereon from date until paid, at the rate of 6% per annum, the interest payable annually as it accrues, both principal and interest payable at Dallas, Texas, for value received, interest to cease on installments after payment.

This note is one of a series of thirteen notes and each to be paid in the order of their number so that the next succeeding higher number comes due only on exhaustion of the preceding number.

By reason of the fact that the payment of each installment of the principal due upon each of said notes stopped the running of interest upon that installment, and by reason of the fact that such installment due on the 15th day of each month was a variable, depending upon the amount of timber cut in the preceding month, it was impossible for the taxpayer to determine at the beginning of each year the amount of interest due on January 22 of the succeeding year. The president of the taxpayer directed that there be set aside on the taxpayer's books from its sales a sufficient amount each month as a reserve to pay interest as it became payable. He directed that the monthly credit entries under the caption "Reserve for other interest" should be determined as a fair monthly proportion of the total interest expected to become payable during the current calendar year upon obligations incurred other than the obligation for the purchase of the original timber; and further directed that the monthly credit entries under the caption "Reserve for timber interest" should be determined as a fair monthly proportion of the total interest expected to become payable on January 22, of the succeeding taxable year. During the years 1916, 1917, and 1918 the taxpayer credited each month to these accounts a round sum to meet the interest expected to become due under the respective accounts, and the balance on each of these accounts at the end of each year was carried over into the reserve for the succeeding year. In its income-tax returns for the years 1917 and 1918, the taxpayer deducted the amount of its reserve for timber interest and the reserve for other interest, and the Commissioner in calculating the deduction for interest for both 1917 and 1918 accrued as of the end of the taxable year the amount of interest for which the taxpayer became liable within that year.

The taxpayer kept its books and made its income-tax returns upon the accrual basis, with the exception of the reserve for timber interest, and the reserve for other interest accounts and the reserve for taxes.

On February 20, 1917, the taxpayer sold the turpentine to be extracted from 5,000 acres of its timber land for the sum of $66,625. Of this amount the sum of $22,208.23 was paid in cash and the balance in two interest-bearing promissory notes for $22,208.23 each, due, respectively, one and two years from February 20, 1917. In making its income-tax returns for the year 1917, the taxpayer showed as income from the sale of said turpentine rights the sum of $22,208.23. To this amount the Commissioner added $44,416.67, making a total of $66,625 as the amount for which the turpentine rights were sold. The taxpayer and the Commissioner have stipulated that the issue relative to the sale of the turpentine rights shall be determined in accordance with the basis set forth in the report of the Engineering Division of the Income Tax Unit, dated April 28, 1925.

Taxpayer was engaged, during the years under review, in the business of cutting and manufacturing into lumber, etc., a tract of long leaf yellow pine timber. The gross sales, the net income, the invested capital, the excess profits and normal profits taxes proposed to be assessed by the Commissioner in the deficiency letter dated August 22, 1924, together with the percentage borne by these items to one another for the years 1917, 1918, and 1919, are as follows:

### 1917.

| | |
|---|---:|
| Sales (timber, store, turpentine) | $498,922.57 |
| Total invested capital at beginning of year | 234,124.77 |
| Invested capital (including allowance for interest) | 470,626.25 |
| Net income | 180,374.67 |
| Tax (excess profits, $52,090.92; normal, $7,697.03) | 59,787.95 |
| Percentage of income to invested capital | 38.326 |
| Percentage of total tax to net income | 33.15 |
| Percentage of excess profits tax to net income | 28.88 |
| Percentage of income to invested capital at beginning of year | 77.04 |

### 1918.

| | |
|---|---:|
| Sales (timber and store) | $364,017.40 |
| Invested capital | 365,081.19 |
| Net income | 90,497.83 |
| Tax (excess profits, $40,791.77; normal, $5,724.72) | 40,516.49 |
| Percentage of income to invested capital | 24.79 |
| Percentage of total tax to net income | 51.40 |
| Percentage of excess profits tax to net income | 45.07 |

1919.

| | |
|---|---:|
| Sales (timber and store) | $505,939.69 |
| Invested capital | 408,893.63 |
| Net income | 162,107.40 |
| Tax (excess profits, $41,344.92; normal, $11,876.25) | 53,221.17 |
| Percentage of income to invested capital | 39.64 |
| Percentage of total tax to net income | 32.83 |
| Percentage of excess profits tax to net income | 25.50 |

The taxpayer, throughout the period under consideration on the dates stated below, had the following amounts of borrowed money in its business:

| | |
|---|---:|
| Jan. 1, 1917 | $773,704.90 |
| Jan. 1, 1918 | 506,653.74 |
| Jan. 1, 1919 | 373,384.76 |
| Dec. 31, 1919 | 272,609.00 |

The only officers who received a salary from the taxpayer during the period 1917 to 1919, inclusive, received the following amounts:

| Name and office. | Years and amounts. | | |
|---|---|---|---|
| | 1917 | 1918 | 1919 |
| John C. Saner, president | | | |
| John Bemis, vice president | | | |
| W. G. Ragley, treasurer and general manager | $1,200 | $1,200 | $1,200 |
| F. J. Ragley, secretary and assistant general manager | 3,000 | 3,000 | 3,000 |

All the officers were experienced lumbermen. They were actively engaged in this business. They handled the finances of the taxpayer, directed and superintended the cutting of the timber and the manufacturing of lumber, and conducted the sales of the products.

The capital stock of the taxpayer was never increased beyond the $200,000 paid-in capital at the time of its incorporation.

The plant account of the taxpayer on December 31, 1916, totaled $194,979.73.

In addition to its income from the proceeds of its business of manufacturing and selling lumber, the taxpayer's books show net income, during the years under consideration, from other sources as follows:

| | Company store. | Rent. |
|---|---|---|
| 1917 | $6,170.90 | $2,855.57 |
| 1918 | 4,978.17 | 1,611.47 |
| 1919 | 9,479.56 | 1,079.46 |

The taxpayer did not receive 50 per cent or more of its gross income for any of the taxable years under consideration on a cost-plus basis from Government contracts.

The deficiency should be computed in accordance with the following opinion. Final determination will be settled on 10 days' notice, under Rule 50.

OPINION.

MARQUETTE: The first question presented by the taxpayer is whether, under the Revenue Act of 1916, it is entitled to deduct interest paid during the taxable year 1917. It bases its contention upon the provisions of section 12 (a) of the Revenue Act of 1916, allowing as a deduction the amount of interest paid within the year. The facts show that its books were kept and its tax returns were made on the accrual basis.

The Board has had occasion to pass directly upon the principle here involved in *Appeal of Tel-Electric Co.*, 1 B. T. A. 434, and *Appeal of North Wayne Tool Co.*, 2 B. T. A. 366, wherein it has been held that a taxpayer keeping its books of account upon an accrual basis and, under the provisions of section 13 (d) of the Revenue Act of 1916, electing to make its returns on that basis, can not deduct from the gross income of 1917, although paid in that year, interest which accrued and became a liability in years prior thereto. The reason for this is that the provisions of section 13 (d) give the taxpayer an option, where its books are kept on a basis other than that of cash receipts and disbursements, to make its returns on the basis upon which its books are kept, provided such basis clearly reflects the income. The taxpayer herein, having kept its books on the accrual basis and having elected to make its returns on that basis, can not now be heard to say that it should be permitted to deduct interest paid within that year. The provisions of sections 12 (a) and 13 (d) must be read together. In the recent decision of the Supreme Court in *United States* v. *Anderson*, 269 U. S. 422, decided January 4, 1926, the following was said in respect of those sections:

While § 12(a) taken by itself would appear to require the income tax return to be made on the basis of actual receipts and disbursements, it is to be read with § 13(d) which we have quoted and which obviously limits in some respects the operation of § 12(a) by providing in substance that a corporation keeping its books on a basis other than receipts and disbursements, may make its return on that basis provided it is one which reflects income.

Standing by themselves and taken at their face value, these sections would seem to require the taxpayer to make his return on the basis of receipts and disbursements or, in the alternative, on the basis of its own books of account if they reflect true income, under such regulations as the Commissioner may make, and indeed to require the latter alternative if the taxpayer is unable to make his return on that basis.

In respect of the year 1917, we are of opinion that the Commissioner properly required the taxpayer to deduct interest on its indebtedness which accrued during that year, and that, with respect to the year 1918, the proper deduction is the amount of interest accrued within the year.

The taxpayer contends, however, that as the interest became due and payable by the terms of the notes on January 22 in each year, it was not accrued until that date. The Board has had occasion to consider the question of when interest accrues and has held that interest is an expense which accrues ratably over an elapsed period of time. *Appeal of Chatham & Phenix National Bank*, 1 B. T. A. 460; *Appeal of Cumberland Glass Manufacturing Co.*, 2 B. T. A. 1122. The Commissioner, therefore, correctly accrued the interest to December 31 of each year.

The taxpayer and the Commissioner have stipulated that the issue with respect to the sale of turpentine rights shall be determined in accordance with a memorandum of the Engineer Division of the Income Tax Unit, annexed to the stipulation. In the computation of the tax, the income, if any, for the years in question, with respect to the sale of such rights, will be computed in accordance with such memorandum.

The taxpayer claims the right to special relief under the provisions of section 210 of the Revenue Act of 1917 and section 327 of the Revenue Act of 1918. The evidence presents no ground for relief under section 210, *supra*. In our opinion, however, the evidence shows such abnormality as to entitle the taxpayer to computation of its taxes for the year 1918 under the provisions of section 328 of the Act of 1918, and the Commissioner's computation thereunder will be considered final.