### APPEAL OF RAYMOND-HADLEY CORPORATION.

Docket No. 5128. Decided September 22, 1926.

DEDUCTION OF ACCRUED BUT UNPAID EXPENSES.—The petitioner during the year 1919 in accordance with its regular method of accounting accrued and set up on its books, as a charge against 1919 business, items of interest, collection expenses, and selling commissions. *Held*, that all such items as finally adjusted were proper charges against 1919 gross income and lawful deductions for that year.

*Arthur W. Rinke*, Esq., for the petitioner.
*M. N. Fisher*, Esq., for the Commissioner.

The petitioner brought this proceeding for a redetermination of an alleged deficiency in income and profits taxes for the calendar year 1919, asserted by the Commissioner to be in the amount of $9,617.35, only a part of which is here in controversy. The errors complained of are (1) the proposed addition to income of alleged " anticipated cash discount " in the sum of $17,953.27, and (2) the disallowance of

a deduction for commissions credited to Raymond-Hadley-Toomey Co. in the sum of $9,422.65.

At the hearing the petitioner waived its claims as to anticipated cash discounts except as to the amount of $4,191.99.

### FINDINGS OF FACT.

The petitioner is a domestic corporation doing business in the City of New York in connection with several affiliated companies and some foreign agencies.

One of these foreign agencies is a corporation known as the Raymond-Hadley-Toomey Co., incorporated under the laws of the State of New Jersey with its legal principal office in the City of New York, but whose business activities are carried on in Great Britain and other foreign countries. The petitioner is the beneficial owner of all the stock of the Raymond-Hadley-Toomey Co. The business activities of the latter company are under the management and control of M. A. Toomey with an English associate. During the year 1919 the petitioner had a large volume of foreign business. One transaction which was a part of this foreign business was a sale of a cargo of flour intended for the Government of the Kingdom of Greece. This transaction was consummated on or about December 3, 1919, and amounted in dollars to the sum of $526,224.85, and the collection of this amount was placed in the hands of the Irving National Bank on December 3, 1919. The petitioner's account with said bank was on that date credited with the sum of $475,000. The petitioner then became obligated to pay to said bank interest at the rate of 6 per cent on $475,000 from December 3, 1919, until the full amount of $526,-224.85 was collected in the due course of business, and to pay to said bank the further sum of ⅜ of 1 per cent of $526,224.85 as a collection charge. The petitioner thereupon caused to be entered in its books of account charges against this selling transaction as follows:

| | |
|---|---:|
| Anticipated discount | $7,901.27 |
| Collection charges | 5,925.26 |
| And a second entry to take care of other possible collection charges in the amount of | 4,126.04 |
| Total | 17,952.57 |

There was also made at that time an entry more directly in connection with the said transaction in which the petitioner charged itself with interest on $475,000, accruing between December 3 and December 31, 1919, in the amount of $2,370.38, and collection charges in the amount of $1,975.32.

Thereafter, in January, 1920, in connection with said flour transaction, the petitioner paid to the Irving National Bank the sum of

$4,591.66 interest from December 3, 1919, to January 30, 1920, and a collection charge upon the amount of the sale in the sum of $1,-975.32. Thereupon the Irving National Bank remitted to the petitioner the sum of $48,156.07, after having deducted the two prior-mentioned items of interest and collection charges. In the adjustment of said interest it was found that of the total amount of interest for the period from December 3, 1919, to January 30, 1920, $2,216.67 was the true amount earned and accrued during the period from December 3 to December 31, 1919, and that the balance of $2,374.99 was earned and accrued in the year 1920. Thereupon the necessary and proper accounting adjustments were made upon the petitioner's books, reducing the interest liability for the year 1919 from $2,370.38 as originally posted to the corrected sum of $2,216.67. After the above journal entries for anticipated discount had been set up to take care of items of interest and collection charges, the bookkeeper reversed the prior entry which had been made to show the possible liability to the Irving National Bank, knowing that this anticipated cash discount included the item for which he had already set up the specific liability, thus making the books show only the actual liability—collection charges $1,975.32 and interest $2,216.67, totaling $4,191.99.

The relationship between the petitioner corporation and the Raymond-Hadley-Toomey Co., so far as relates to the latter's business activity, is in the nature of agency. When the Raymond-Hadley-Toomey Co. negotiates sales of flour for the petitioner it gets the same commissions that it earns when it does the same kind of business for other flour mills which are competitors of the petitioner. The Raymond-Hadley-Toomey Co. is the exclusive representative of the petitioner in England and the British Isles. From the inception of the organization of these companies Toomey received a salary equivalent to 50 per cent of the net profits of that business and the balance was regularly paid or credited to the Raymond-Hadley Corporation as dividends on the stock, and it has carried on the business of flour commission merchants in London since that time, representing not only the Raymond-Hadley Corporation but also its principal competitors in the American market, on the same basis on which they represented the Raymond-Hadley Corporation. Under these agency arrangements, in the month of September, 1919, the Raymond-Hadley-Toomey Co. was credited on the books of the petitioner with $8,905.34, and in the month of December, 1919, there was a similar credit item of $9,939.96, a total of $18,845.30. This amount was not remitted to the Raymond-Hadley-Toomey Co. during the year 1919. On December 20, 1920, petitioner's journal showed a credit to income of $16,868.98 and Toomey

was debited $16,868.98 as compensation, the same being one-half of the amount credited in the years 1919 and 1920, representing the petitioner's one-half share of the earnings of the Raymond-Hadley-Toomey Co. and Toomey's one-half share as his salary compensation. Instead of transmitting this whole sum and having 50 per cent of it returned, which would entail considerable expense, it was credited on the books of account and that showed 50 per cent of the earnings of the Raymond-Hadley-Toomey Co. received by the petitioner as in the nature of a dividend. Due to the close business relationship between the petitioner and the Raymond-Hadley-Toomey Co. there is always an account current standing on each company's books, and when settlements are made instead of remitting the amounts due remittances are made only of the difference between the debit and the credit balances. On September 21, 1920, a transfer of pounds sterling was made to Raymond-Hadley-Toomey Co. in an amount equivalent to $6,499.08 and another transfer of pounds sterling equivalent to $9,514.07, and later a further transfer of pounds sterling equivalent to $762.82, applying against the balance then standing to the credit of said company upon the petitioner's books.

OPINION.

Trussell: 1. When in December, 1919, the petitioner made a sale of a cargo of flour for foreign account in an amount of $526,-224.85, and having placed that account in the hands of the Irving National Bank for collection and received a credit of $475,000, the petitioner assumed the obligation of paying to the bank interest upon the credit at the rate of 6 per cent, and a collection charge of $\frac{3}{8}$ of 1 per cent on the amount involved in the transaction. The amounts due under these obligations were capable of exact computation and the petitioner in accordance with its regular accounting method charged itself with the collection charge in the amount of $1,975.32 and interest in the amount of $2,370.38. Later this interest item was readjusted as finally settled in the amount of $2,216.67. We are of the opinion that both of these items were properly accruable obligations against petitioner's business for the year 1919, and, having been set up on the petitioner's books in accordance with its regular method of accounting, must be allowable deductions from gross income for the year 1919. (Cf. *United States* v. *Anderson*, 269 U. S. 422.)

2. The record shows that during the year 1919 the petitioner's London agent for the sale of flour earned commissions in the aggregate amount of $18,845.30; that that amount was set up on the petitioner's books of account according to its regular method of accounting as commissions earned and owing to the London agent; and

that in the ordinary course of business the petitioner would during the year 1919 or thereafter have paid to the London agent the total amount of $18,845.30 and would have been entitled to a deduction from gross income for the year 1919 in that amount.

It is not important whether this method of accounting is peculiar to this petitioner or whether it is a generally recognized method of accounting between principal and agent. Section 212 (b) of the Revenue Act of 1918, under which this controversy arises, provides, among other things, that " The net income shall be computed upon the basis of the taxpayer's annual accounting period   *   *   *   in accordance with the method of accounting regularly employed in keeping the books of such taxpayer," subject, however, to the qualification that such method of accounting must " clearly reflect the income." In view of the accounting methods plainly set forth in the findings of fact relating to the transactions here involved, we are of the opinion that the petitioner's method of keeping its books of account does clearly reflect its annual income, and that the portion of the commission deduction disallowed by the Commissioner must be allowed.

> *Order of redetermination will be entered on 15 days' notice, under Rule 50.*