HUMBLE & GULF COAST OIL CO., PETITIONER, *v.* COMMISSIONER OF
INTERNAL REVENUE, RESPONDENT.

Docket No. 1078.   Decided October 30, 1926.

1. Proof relative to certain deductions for losses claimed by
the petitioner and disallowed by the Commissioner, considered
and *held* insufficient to establish error.

2. Proof relative to an alleged error in the computation of
invested capital *held* insufficient to establish error.

*J. E. Niday, Esq.*, for the petitioner.
*John D. Foley, Esq.*, for the respondent.

In this proceeding the petitioner seeks a redetermination of a
deficiency in income and profits taxes for the year 1920 in the sum
of $2,688.97. The errors alleged are, first, the disallowance as de-
ductions of certain alleged losses; and, second, the failure to allow
the excess profits credit in the computation of invested capital.

FINDINGS OF FACT.

The petitioner is a trust association acting under a declaration of
trust made pursuant to the laws of the State of Texas and filed in
Harrison County of that State.

On its income and profits-tax return for the year in question, the
petitioner claimed, among others, the following losses, all of which
were disallowed:

(1) $7,000 paid for Hardin lease of two acres, Burkburnett townsite.
(2) $107,000 loss on sale of Kansas leases.
(3) $30,118.22 loss on equipment.
(4) $540 loss due to personal injuries to workman.
(5) $70,075.13 development and promotion expense.

On January 24, 1919, Hardin and his wife, in consideration of
$7,000 paid on the execution of the lease, leased to the petitioner cer-
tain property for a term of five years. The rental stipulated was
one-eighth of the oil produced and saved, and a monthly cash pay-
ment out of the proceeds of the sale of gas and casing-head gas. It
was provided that the lease should terminate if drilling was not com-
menced on the land on or before May 24, 1919, unless the lessee on
or before that date paid the lessors the sum of $1,000. Upon such
payment, the period within which a well should be drilled was ex-
tended four months. At the end of such four-month period the
drilling might again be similarly deferred upon the payment of
$1,000, and so on until the expiration of the term. It was further
provided that, if the first well drilled proved to be a dry hole, a
second well should be commenced within twelve months from the

expiration of the last rental period for which the rental had been paid, unless before the expiration of such twelve-month period the rental payments had been resumed.

The petitioner drilled a well in 1919 which proved to be a dry hole. The record is silent as to rental payments subsequent to the drilling of such well and as to a declaration of forfeiture or abandonment.

In the year 1918 the petitioner purchased certain leases covering 969 acres of land in Neosho County, Kansas. Upon the land so leased were nine or ten producing oil wells. The leases were sold in the year 1919. Neither the purchase nor the selling price of the leases is in evidence.

The petitioner owns an oil well in the Burkburnett oil field. On this property were numerous items of personal property, such as a derrick, tanks, etc., all of which were destroyed by fire. The record does not disclose the year of the fire, the cost of the property destroyed, nor the insurance or salvage, if any.

In 1919 one of the employees was injured and in 1920 the matter was adjusted by a payment to him of $540. The Commissioner denied the deduction, apparently upon the theory that the petitioner kept its books upon the accrual basis. There is nothing in the evidence to indicate whether its books were kept upon the cash or the accrual basis.

### OPINION.

GREEN: The first assignment of error relates to the disallowance of five deductions claimed by the petitioner in its return.

The first deduction in controversy is an alleged loss resulting from the Hardin lease. It is obvious from an examination of the lease that the petitioner herein might, upon the making of certain payments specified therein, remain in possession during the full term of the lease. As was set forth in the findings of fact, there is no evidence as to the rental payments or as to a declaration of forfeiture or abandonment. We can not tell from the records whether the lessee's rights were ever terminated, and, consequently, we must hold that there was no loss in the year 1920.

The second deduction in controversy is an alleged loss on the Kansas leases. The petitioner, while admitting that the loss was sustained in 1919, contends that because it failed to deduct it in that year that it is entitled to deduct it in 1920. There is no provision of the statute under which such a shifting of losses is permissible, and, consequently, we must approve the action of the Commissioner as to this loss.

The third deduction in controversy is an alleged loss on equipment destroyed by fire. The petitioner has failed to prove the cost of the property destroyed, the insurance or salvage, if any, and the year in which the fire occurred. Under such a state of proof, we must affirm the Commissioner.

The fourth deduction in controversy is a loss due to personal injuries to an employee. In the disallowance of this we believe the Commissioner was in error. So far as the evidence discloses there was nothing to accrue in the year 1919, and, consequently, having paid the loss in 1920, the petitioner is entitled to a deduction for the amount thereof in that year, regardless of whether it was on a cash or on an accrual basis.

The petitioner abandoned its deduction as to the expenditure of $70,075.13 which it claims the right to deduct as development and promotion expense.

The second assignment of error relates to the computation of invested capital. It is contended that the proposed excess profits tax of $1,849.26 can not be correct, since the net income was determined by the Commissioner to be $12,246.31. This contention is apparently based upon the misapprehension that the excess-profits credit is computed by taking 8 per cent of the outstanding capital stock. Such is not the law. Section 301 (b) of the Revenue Act of 1918 requires the tax in the first bracket to be 20 per centum of the amount of the net income in excess of the excess-profits credit. Section 312 of the same Act provides that such credit shall consist of a specific exemption of $3,000 plus an amount equal to 8 per cent of the invested capital.

The record is wholly silent as to the invested capital of the petitioner. We do not know what was claimed or what was allowed. It is apparent that the Commissioner did not allow an invested capital equal to the par value of the outstanding capital stock, but there is nothing to indicate that his determination in this regard was erroneous.

*Judgment will be entered after 15 days' notice, under Rule 50.*

PHILLIPS, dissenting: I dissent so far as a deduction is allowed in 1920 for an amount paid in that year to an employee for injuries sustained by him in 1919. It is the intention of the statute to tax the true earnings of each year as income for that year. Necessarily, this involves the deduction within the year of any expense connected with the production of the income of that year. It can not be logically contended that the amount paid in 1920 in settlement

for injuries to an employee in 1919 has any relationship to the earnings for 1920, for the liability existed regardless of whether or not the company operated in 1920. If deducted in 1920, the true income is distorted to that extent. In these circumstances, it is my opinion that the amount paid was properly chargeable against 1919 income and was a deduction in computing the net income of that year. *United States* v. *Anderson*, 269 U. S. 422; 46 Sup. Ct. 131; 5 Am. Fed. Tax Rep. 5674.

Although it may be doubted whether there is any method by which net income from the operation of a business may be computed to the last cent, the statute lays down a rule by which taxpayers are to compute net income and should be so interpreted as to reflect the true net income as accurately as may be. This statute provides for numerous deductions from the gross income of a trade or business, among which are (1) all the ordinary and necessary expenses paid or incurred during the taxable year, (2) losses sustained in the taxable year and not compensated for by insurance or otherwise. The first of these deductions is general in its terms and the second specific. Under familiar rules of statutory interpretation, losses would be governed by the second provision, not by the first, and if, as the prevailing opinion indicates, the deduction is to be taken as a loss, it must be taken in the year in which sustained, regardless of the year in which it may have accrued or been paid. *Martin Veneer Co.* v. *Commissioner*, 5 B. T. A. 207.

The prevailing decision can only be justified upon the ground that the deduction claimed can not be classified as a loss, but must be treated as an ordinary and necessary business expense which is deductible when paid or incurred. If it should be so regarded, I can not consider this payment as more than the adjustment of a liability incurred in 1919, in which year the casualty occurred and the liability to compensate the employee arose. All that happened in 1920 was the determination and measurement of the previously existing liability. No new liability was incurred in that year.

It may be said that this presents a difficulty in administration, since the income can not be accurately determined at the end of the year. This is not unusual; witness the fact that the courts and this Board are constantly called upon at the present time to determine the correct income of periods ten years and more in the past. We might even be permitted the thought that this was one of the reasons for the provisions in the various taxing statutes allowing several years in which the Commissioner may make additional assessments and taxpayers may file claims for refund.