LISK MANUFACTURING CO., LTD., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 11438, 19050, 10031.   Promulgated March 23, 1928.

*Thomas J. Hargrave, Esq.*, for the petitioner.
*Shelby S. Faulkner, Esq.*, for the respondent.

OPINION.

PHILLIPS: The Board is without jurisdiction to redetermine petitioner's taxes for the year 1921, because the Commissioner determined no deficiency in taxes for that year, (section 274 (g) of the Revenue Act of 1926.) *Appeal of Cornelius Cotton Mills*, 4 B. T. A. 255; *Yakima Transfer & Storage Co.* v. *Commissioner*, 10 B. T. A. 244; *Appeal of Navarro Lumber Co.*, 10 B. T. A. 690.

The petitioner alleges several errors in the computation of the deficiencies. At the hearing the parties presented a recomputation of the tax which was filed with the statement that it disposed of all questions except:

(1) Whether invested capital was properly reduced by the amount of $349,965.60, the alleged cost of the patent rights acquired from James R. McLaughlin;

(2) Whether the respondent correctly refused to permit any allowance for the exhaustion of the cost or March 1, 1913, value of such patent; and

(3) Whether invested capital was properly reduced by additional taxes of prior years determined and assessed after the taxable years.

The evidence discloses that on July 20, 1905, James R. McLaughlin filed an application for a patent upon certain improvements in meat roasters, the object of the invention being to provide a roaster having improved means for basting and for inserting and removing the contents of the roaster. In this application, McLaughlin made four claims for his invention, three of which had been rejected by an examiner of the Patent Office prior to October 17, 1907, and one of which had been allowed. The claim allowed as the invention of McLaughlin read:

In a roaster, an upper section formed from a single piece of sheet metal and having a concave top provided on its under side with an oval groove or depression near the center of said top and a series of straight grooves or depressions radiating from said oval groove towards the sides of said section, for the purpose specified.

In the specifications it is stated that these depressions are for the purpose of directing the condensation to a point where it will drip upon the meat in the roaster. Several unsuccessful efforts were made to amend the rejected claims. In 1910 all claims except the one quoted above were withdrawn and a patent issued on May 2, 1911.

For several years prior to 1907, James R. McLaughlin was the president and one of the directors of the petitioner. In 1905 the petitioner began the manufacture of meat roasters under the application for letters patent. No royalty was paid to McLaughlin. On October 17, 1907, the directors of the petitioner held a meeting at which it was resolved that the company should purchase of James R. McLaughlin all his right, title and interest in the patents owned by him, governing the manufacture of self-basting roasters, paying therefor $349,965.60, of which amount $169,965.60 was attributed to the United States patent and the balance to various foreign patents. All rights to the invention and under the pending application were assigned by McLaughlin to the petitioner on October 19, 1907, and his account credited with the purchase price. In computing the deficiencies here in question the Commissioner reduced the invested capital of the petitioner by the amount paid for the patent and refused to permit any deduction as an allowance for the exhaustion of the cost or March 1, 1913, value thereof.

If these were the only facts, it would seem clear that error had been committed by the Commissioner. Invested capital is a statutory concept made up of amounts paid in to a corporation for its stock, or as paid-in surplus, and of its undistributed earnings. Generally speaking, the amount of the invested capital is not affected by the purchase of property, such a purchase representing merely a change in the form of the amounts originally paid in or subse-

quently earned. The Commissioner in the present case, however, asserts that the patent was at all times owned by the corporation and not by McLaughlin; that McLaughlin was heavily indebted to the corporation and was insolvent; and that the transaction was merely one by which the patent was written up on the books of the corporation for the purpose of reducing the indebtedness. In support of his position the Commissioner shows that on October 19, 1907, the date on which the patent was assigned by McLaughlin to the corporation, McLaughlin was indebted to the corporation in the amount of $276,664.93, and that on November 2, 1907, the account of James R. McLaughlin was charged with the following amounts which were thereupon credited to the persons named: J. L. McLaughlin, $78,421.71; Thomas W. Martin, $78,391.60; L. A. Parkhurst, $78,386.42; C. D. McLaughlin, $31,064.20; W. H. Llewellyn, $2,000; H. G. Fitch, $1,997.30; Walter W. Martin, $1,271.20.

J. L. McLaughlin, C. D. McLaughlin, Martin and Parkhurst were all directors of the petitioner corporation.

The petitioner counters with testimony establishing that in 1907 the patent had already proved itself to be valuable and showing subsequent sales of the roaster averaging $73,968 per annum for the years 1908 to 1925, inclusive, an average profit of $34,449.86 for the fifteen-year period from 1911 to 1925, inclusive, or total profits from the sale of the patented article of over $500,000. It further establishes that this article was readily salable and was availed of for the purpose of inducing merchants to carry other articles of petitioner's manufacture. It also shows that in October, 1907, the credit reputation of James R. McLaughlin was good, and that he was the owner of 2,849 shares of the common stock of the petitioner, having a market value of from $85 to $90 per share. At that time 20,000 shares were outstanding. There was no attempt to show that the patent was developed by the petitioner or was owned by it rather than by McLaughlin. An application was filed by him, the patent was issued to him, the assignment of his rights under application is properly made and the minutes of the meeting of the board of directors of October 16, 1907, recites the ownership of the patent to be in McLaughlin. There can be no doubt that it had a substantial value. The transfers made on the books by which James R. McLaughlin was charged with a part of the amounts due the corporation from other directors and other persons is not shown to have any connection with the purchase of the patent.

It may be that the coincidence of the purchase of the patent and the transfers of indebtedness a few days later was sufficiently suspicious to require the respondent to investigate the circumstances which led to such a transfer. If any such investigation was made, we are without evidence of its results. Apparently the deficiency

letter was issued upon the basis of the suspicions aroused by the fact that these transfers of indebtedness were made. There is a presumption that the directors of a corporation act regularly and it should be evident that a bare suspicion arising out of what may well have been a pure coincidence presents nothing which would justify us in disregarding the *prima facie* case made out by the petitioner. We are of the opinion that the Commissioner erred in reducing petitioner's invested capital by the amount paid for the rights under patent application.

We come next to consider the March 1, 1913, value of the patent for purposes of computing a reasonable allowance for exhaustion. There is no evidence of the value of the foreign patents on that date, or of either the date when foreign patents were granted, or the period of their life. We are thus left without any basis for determining what constitutes the reasonable allowance permitted by statute as a deduction. The opinion evidence of the value of the United States patent is entitled to little or no weight. To the extent that the opinion in question was based on any factors, it represented a capitalization of the present worth of the amounts which might have been paid upon a royalty basis. The value to be determined is the fair market value, or actual cash value of the patent, on the basic date. We have often had occasion to point out the difference between a transaction in which the purchaser makes immediate payment and assumes all the risks of an unprofitable venture, and one in which he pays on a royalty basis, paying little or nothing if the venture is unsuccessful. In one the purchaser invests his capital and takes his chances; in the other his expenditures for the use of the patent are proportionate to his success in making use of it. It seems beyond question that if a reasonable royalty was $2 per dozen, as the testimony indicates, no business man who could have obtained the exclusive right to its use on that basis would have paid in advance a lump sum equal to the present value of the anticipated annual royalties for the full life of the patent.

The sales for the five years prior to March 1, 1913, indicated an annual market for about 70,000 roasters. On the basis of past performance no great increase in the number of sales could be anticipated. In fact, none took place until some ten years later. The annual royalty at $2 per dozen on this output would have been $11,666.67. On March 1, 1913, the patent had approximately fifteen years to run before its expiration. Considering these facts together with the nature of the patent, the market developed and other minor factors, we are of the opinion that an amount equal to five years royalties would approximate the March 1, 1913, value, which we therefore fix at $60,000.

The Commissioner reduced the petitioner's invested capital by additional income and profits taxes for prior years. Petitioner contends that since such additional taxes were not determined or assessed until after the taxable years in question, they should not be taken into account in computing invested capital. The liability to pay these taxes existed at the beginning of the year (*United States v. Anderson*, 269 U. S. 422; 5 Am. Fed. Tax Rep. 5674) and was none the less real because petitioner did not know of its additional liability. Earned surplus is not properly computed until provision for all liabilities has been made. The action of the Commissioner was proper, but the amount deducted from earned surpus for such additional taxes must be adjusted to accord with the tax liability computed in accordance with this opinion.

*Decision will be entered under Rule 50.*