## HALL v. UNITED STATES.
### No. 5934.

Circuit Court of Appeals, Fifth Circuit.
Feb. 12, 1931.

128

Chas. S. McCombs, Roy C. Ledbetter, and G. Drummond Hunt, all of Dallas, Tex., for appellant.

Norman A. Dodge, U. S. Atty., of Fort Worth, Tex., for appellee.

Before BRYAN and FOSTER, Circuit Judges, and HUTCHESON, District Judge.

HUTCHESON, District Judge.

Appellant brought this suit under the Tucker Act (24 Stat. 505) to recover income taxes alleged to have been erroneously and illegally paid by the corporation prior to bankruptcy.

This petition, in flagrant violation of the provisions of the statute authorizing the suit that "it shall set forth the nature of the claim and a succinct statement of the facts upon which the claim is based" (Tucker Act § 5 [28 USCA § 762]), in a prolix, diffuse, and unreasonably discursive way, supported by numerous exhibits, undertakes to set forth, in the same petition as a basis for recovery, two contradictory theories.

One of these theories is that since the scheme as they allege was devised to defraud the purchasers of machines by the pretense that the revenues were to be derived from the operation of such machines when in fact none were to be, that all of the moneys returned by the corporation as income upon which it paid the taxes here in question were and remained in fact the moneys of the purchasers; that therefore the government took no title to the money which was paid to it as taxes, but held it in trust for the defrauded purchasers just as the Automatic Inn had done before payment.

The other is that if the moneys paid to the government were the moneys of the corporation, they were improperly paid to the United States as against it, for that in fact no income accrued to the company for the year 1925, but instead a heavy loss. Appellant says that instead of moneys received that year being accounted for as income there should have been charged against such receipts the cost and expenses for servicing the machines for the five years for which the contract had to run. The proper charging of these costs and expenses they say would show a heavy loss, rather than a profit.

It is at once apparent that the position of appellant is wholly untenable, and that a petition asserting such contradictory causes of action, the one denying, the other affirming, title in the corporation in the same suit cannot stand, and that for that reason alone the general demurrer should have been sustained, and appellant declining to amend, his suit should have been dismissed.

We have, however, considered the petition from the standpoint of determining whether, if appellant had elected to stand upon either leg of it, he could have done so. We think it plain that he could not.

Turning first to that phase of it which seeks to recover the income paid on the ground that though the receipts are moneys of the corporation, no income tax was due because, after proper charge-offs no income was really received in that year, it is plain that this claim seeks, contrary to the method of accounting of the taxpayer on the basis of which the income was assessed, to set up as deductions expenses and losses which might accrue in future years. Such deductions are not allowable because nothing in the accounts of the taxpayer as kept will justify such deductions.

But if it be conceded that the account should be restated and re-examined in accordance not with the way in which the taxpayer actually kept his books, but with the way in which the books ought to have been

kept, there is nothing in the petition which would sustain recovery.

It is the duty of the taxpayer to show the facts establishing the invalidity of the tax. U. S. v. Anderson, 269 U. S. 422, 443, 46 S. Ct. 131, 70 L. Ed. 347. There is nothing in the petition except assumptions and suppositions as to what the future losses might turn out to be, except the general insistence that as the whole plan was fraudulent, and in the nature of things no earnings could have been legitimately made, there could have been no income, in a proper sense, to accrue.

This statement of the scheme defeats appellant on this theory of recovery, for if it was, as appellant alleges, intended by the corporation to defraud its customers, if it did not intend to give any service, if it did not intend to put back into the enterprise in carrying out its contract any of the receipts, if it merely intended to make its profits through converting to its own use all of the moneys which it had received through its swindling, then the corporation would have had no expenses or charges to offset in the future years, and would be liable for the full amount of its profits from the swindling.

This outcome of the charge of fraudulent purpose as applied to this theory of appellant's recovery illustrates the fundamental vice of appellant's position, and the inextricable dilemma in which he finds himself, for if the matter is looked at from the standpoint of the moneys being corporate funds and recoverable, if recoverable at all, by its trustee, as moneys of the corporation, it is perfectly plain that in the way the corporation kept its books and made its returns, the assessment was proper upon the theory that the scheme was fraudulent, in that they did not intend to perform the service contract, and there would never be any proper deductions, because under such circumstances the whole amount received would be profit.

While if looked at upon the theory that the corporation was running a legitimate business, and intended to incur the expenses and obligations which, when incurred, might be proper deductions, the pleadings show no ground for recovery there, because nothing is shown in the pleadings other than mere assumptions as to what the future losses and deductions would be, and the taxpayer having made his settlement upon his own theory, cannot now, without clear proof of its incorrectness, recover back the moneys paid, but must wait and make his claims at a time when their correctness may be demonstrated.

Taking up the other theory of the appellant, that the trustee is entitled to recover the money back, not as the money of the corporation, but as the money of the creditors of the corporation, it is perfectly plain that this will not do. The very suit here denies itself.

If the machine creditors, as they are called, that is, the ones to whom machines were sold, are in fact creditors of the Automatic Inn Company, they are so because they have affirmed the purchase and are suing for their damages sustained from the fraud. Under such circumstances it would not be possible for these persons to have title to the moneys which they have paid the bankrupt corporation and be at the same time, as to the same moneys, creditors of such corporation.

The law compels an election. They must either be creditors of the company and pressing suit in its right, looking for their ultimate recovery through dividends on their claims, or persons who, having in due time rescinded their contracts, are pressing the suit not in the name of the company, or for its benefit, but in their own names and in its despite. La Cueva Ranch Co. v. Brewer (C. C. A.) 283 F. 963.

But apart from all of this, appellant cannot recover, for here he sues for a sum paid to the United States insignificant and trivial in amount as compared to the large sums which the corporation took in from persons to whom it sold machines, and the petition not only does not identify, but negatives the possibility of identifying this amount as any part of the sums received from those who now press the claim.

It is plain that appellant finds himself defeated for the same reasons which defeated those suing in Cunningham v. Brown, 265 U. S. 1, 44 S. Ct. 424, 427, 68 L. Ed. 873. There the court held that persons who had paid Ponzi could not claim to be other than creditors unless they could point out and claim the very moneys which they had paid in.

"The victims of Ponzi," said the court "were not to be divided into two classes, those who rescinded for fraud and those who were relying on his contract to pay them. They were all of one class, actuated by the same purpose to save themselves from the effect of Ponzi's insolvency. Whether they sought to rescind, or sought to get their money as by the terms of the contract, they were, in their

inability to identify their payments, creditors, and nothing more."

Finding no error in the action of the court in sustaining the general demurrer, the judgment is affirmed.