*968 OPINION.
Black :
The two issues in this proceeding are, (1) Whether or not the commissions on mortgage loans referred to in the findings of fact are to be treated as income in the year in which the mortgages are made or are to be prorated over the life of the mortgages and reported as income ratably for each year over which said loans *969 extend, and (2) Whether or not expenses, including brokerage charges paid by the petitioner for the sale of its bonds, are to be treated as expense in the year in which paid and deducted in their entirety in that year, or are to be prorated over the life of the bonds and deducted ratably.
As to issue (1), in cases where the taxpayer keeps his accounts on an accrual basis, as has been stipulated in the instant case, we have held that commissions charged for making loans are returnable and taxable in the year when the loans are made and the services performed. Columbia State Savings Bank, 15 B. T. A. 219; affd., 41 Fed. (2d) 923; North-Western Trust & Savings Bank, 20 B. T. A. 365. In affirming our decision in Columbia State Savings Bank, supra, the court said:
In the instant ease petitioner was acting in the two capacities of lender of the money and of loan broker. It charged its commission for the services of procuring the loan, and this was earned at the time the loan transaction was closed. Had the borrower received the full amount of the loan and then paid the commission or had it paid the commission independently of the loan, there could be no question but that it constituted income at that time, taxable as of that time, even if on a cash basis.
The court in its opinion distinguished on the facts Blair v. First Trust & Savings Bank of Miami, 39 Fed. (2d) 462, pointing out that in the latter case the taxpayer kept its books and made its returns on the cash receipts basis and that, moreover, as stated by the Board of Tax Appeals, the taxpayer treated on its books the commissions as unearned until such time as the notes were paid or sold, 11 B. T. A. 1034. On issue (1) we hold for the respondent.
We will now discuss issue 2. The Board has held in numerous cases that expenses of floating bond issues, including brokerage fees for selling them and bond discount, can not be deducted in their entirety in the year when such bonds are sold, but must be spread over the life of the bonds. East Ninth Euclid, Co., 26 B. T. A. 32; Liberty Farms Co., 22 B. T. A. 1298; Pictorial Review Co., 26 B. T. A. 472.
The expenses and commissions incurred in the sale of bonds subsequent to March 1,1913, are amortized ratably over the term for which the bonds are issued. Chicago, Rock Island & Pacific Ry. Co., 13 B. T. A. 988; Kansas City Southern Ry. Co., 22 B. T. A., 949, 966.
The petitioner in its brief lays stress on the proposition that, when a taxpayer keeps its books on an accrual basis, the same treatment must be accorded gross income items as is applied to expense items and vice versa, and cites in support thereof United States v. Anderson, 269 U. S. 422, and other Supreme Court cases. Petitioner points out that in United States v. Anderson, supra, the Supreme *970 Court said, with reference to sections 12 (a) and IB (d) of the Revenue Act of 1916, followed by similar language in later acts: “ It was to enable taxpayers to keep their books and make their returns according to scientific accounting principles by charging against income earned during the taxable period the expenses incurred in and properly attributable to the process of earning income during that period.”
Were the expenses, including brokerage fees which petitioner paid to the Baltimore Trust Company for selling its bonds, in the respective taxable years “incurred in, and properly attributable to the process of earning its commissions ” within the meaning of the Supreme Court’s decision in United States v. Anderson, so as to make such bond expense and brokerage fees deductible in their entirety in the year when incurred, notwithstanding the numerous decisions which we have cited above which hold that such bond expenses are not deductible in their entirety in the year when incurred, but must be spread ratably over the life of the bonds? We think not. The facts stipulated do not show the gross amount of loan business which petitioner was doing in any of the taxable years or what relation the amount of bonds sold in any particular year had to the amount of loan business done by petitioner in that particular year. But even if such figures had been shown, the fact remains that the sale of petitioner’s bonds from time to time to replenish its funds were transactions separate and apart from the making of loans to its customers. The bonds had a maturity ranging from one to ten years, whereas the period of the mortgage loans ranged from one to three years. This we think presents a vital distinction and emphasizes the separateness of the two transactions. True it is that petitioner’s mortgage loans were used as collateral for its bonds, but we do not think that fact would change the well established rule that expenses of floating bond issues must be amortized over the life of the bonds. The situation we have here is not the same as existed in American National Co. v. United States, 274 U. S. 99. In that case the taxpayer for its services in making loans required the borrower to execute a note due in two years without interest for 10 per cent of the total amount of the loan. The amount represented by these notes was accrued by the taxpayer on its books as income. In order to secure money with which to operate its business, the taxpayer sold the mortage notes (not the commission notes) and executed a separate contract with the purchaser of the notes to pay him one per cent annually to the maturity date of the notes as a bonus in addition to the regular interest which the maker of said mortage notes was to pay.
*971 The taxpayer thereupon accrued on its books as an expense liability the full amount of such bonus payments which it had incurred in any particular year. The Supreme Court sustained taxpayer’s method of keeping its books and making its tax returns on that point, saying:
In the present case, we think that the amount of the bonus contracts was “ an expense incurred and properly attributable ” to the Company’s process of earning income during the year 1917. These contracts were not analogous to obligations to pay interest on money borrowed, but were expenses incurred in selling the loan notes in as real a sense as if under its original system of doing business the Company had paid these amounts to brokers as fees for selling the loans or given them notes for such fees. The Company’s net income for the year could not have been rightly determined without deducting from the gross income represented by the commission notes, the obligations which it incurred under the bonus contracts, and would not have been accurately shown by keeping its books or making its return on the basis of actual receipts and disbursements. The method which it adopted clearly reflected the true income. And, just as the aggregate amount of the commission note was properly included in its gross income for the year — although not due and payable until the expiration of two years — so, under the doctrine of the Anderson case, the total amount of the bonus contracts was deductible as an expense incurred within the year, although it did not “ accrue ” in that year in the sense of becoming then due and payable.
Manifestly in the instant case if petitioner had used the method of selling its mortgage notes to investors and had paid brokerage fees in connection therewith as, in the American National Go. case, and contracted to make bonus payments direct to investors to induce them to purchase the notes, it would have been proper to have accrued such selling expenses in their entirety in the year when the sales were made. That would be true under the doctrine announced by the Supreme Court in American National Co. v. United States, supra. But petitioner did not sell its mortgage notes, but on the contrary retained title to them, subject to their being held as collateral security to secure the payment of the bonds, ranging in maturity from one to ten years, as against maturities of the notes ranging from one to three years.
This sort of a situation we do not think is the same as in the American National Co. case, and therefore does not justify us in holding that the expenses of petitioner’s bond issues, including brokerage fees paid to the sellers of the bonds, should be accrued in their entirety in the year when the bonds were sold, but should be amortized over the life of the bonds as we have held in numerous decisions, already cited. On this issue we hold for respondent.
Reviewed by the Board.

Decision will be entered under Rule 50.