## COTTON STATES FERTILIZER CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 105397. Promulgated September 23, 1942.

Charles J. Bloch, Esq., for the petitioner.
J. Marvin Kelley, Esq., for the respondent.

750

## OPINION.

KERN: The first question presented in this proceeding is whether petitioner is entitled to the credit provided by section 26 (c) (1) of the Revenue Act of 1936.[1] In order to be so entitled, petitioner must show

---

[1] SEC. 26. CREDITS OF CORPORATIONS.

In the case of a corporation the following credits shall be allowed to the extent provided in the various sections imposing tax—

    \*        \*        \*        \*        \*        \*        \*

(c) CONTRACTS RESTRICTING PAYMENT OF DIVIDENDS—

(1) PROHIBITION ON PAYMENT OF DIVIDENDS.—An amount equal to the excess of the adjusted net income over the aggregate of the amounts which can be distributed within the taxable year as dividends without violating a provision of a written contract executed by the corporation prior to May 1, 1936, which provision expressly deals with the payment of dividends.  \*  \*  \*

(1) a written contract; (2) executed by it before May 1, 1936, (3) expressly dealing with the payment of dividends, (4) which would be violated by its distribution during the taxable year of amounts as dividends. The written contract executed by petitioner in 1934 provided that "applicant will not, without the prior written consent of R. F. C. * * * declare or pay any dividend or make any distribution upon its capital stock." Petitioner did not ask for the consent of R. F. C. to the payment of dividends; none was granted; and petitioner paid no such dividends during the taxable year. The precise issue, therefore, is whether, under the facts shown, the distribution of dividends by petitioner during the taxable year would have been in violation of the quoted provision of the contract.

It seems to us obvious that it would have been. A distribution of dividends by petitioner would not have been a violation of such contract *only if* consented to in writing by the other party to the contract. Such a consent would have been in the nature of a waiver or modification of an obligation by the obligee of a contract, which is always possible even though not expressly provided for, but until the obligation is waived or modified, it is in full force and can not be violated with immunity. That such consent might have been granted by R. F. C. if requested by petitioner seems to us immaterial. It was not granted and no request was made. Moreover, we can not assume that R. F. C. would have given its consent. *Sutcliffe Co.*, 41 B. T. A. 1009, 1014.

In *Kilby Steel Co.*, 41 B. T. A. 1237, we held that a similar contractual provision effectively prohibited the payment of dividends. It is true that in that case it was stipulated that a request for permission from the obligee to pay dividends would have been refused, that the payment of dividends by the taxpayer would not have been sanctioned by sound business practice, and that the taxpayer knew that any request to pay dividends would have been refused. These facts, however, were not essential to our holding. The essential fact is pointed out in one sentence: "It [taxpayer] did not request * * * permission from either of the banks to pay a dividend nor was such permission granted."

The situation here presented is the legal converse of that considered by us in *Atlantic Co.*, 45 B. T. A. 657. There the taxpayer corporation could declare a dividend without violating a contract, but if it did, then the creditor could take certain steps. Here the petitioner could not make a dividend distribution without violating a contract, but if the creditor consented, then and only on that condition could such a distribution be made.

On this issue we decide in favor of petitioner.

The second issue has to do with the right of petitioner in the taxable year to deduct officers' salaries in amounts in excess of those authorized by its contract with the Reconstruction Finance Corporation. The salary items in question consisted of certain increases in the salaries of the president and treasurer of petitioner which were made by petitioner's board of directors in the taxable year, "subject to the approval of the Reconstruction Finance Corporation during the time their loan to the company is in effect, and any part thereof not approved by said Reconstruction Finance Corporation shall be cumulative and subordinated to the Reconstruction Finance Corporation loan." The Reconstruction Finance Corporation in the following taxable year approved only a part of such increases and petitioner in the latter year paid to the officers in question only that part of the increases so approved. The stipulations of fact do not disclose whether petitioner is on the accrual basis of accounting and do not disclose how petitioner treated the amounts, paid and unpaid, of such salary increases on its books during the taxable year. Petitioner's tax returns for the taxable year were not introduced in evidence.

Even if we assumed in petitioner's favor that it was on the accrual basis during the taxable year, we are still not of the opinion that the salary increases provided for in the quoted resolution are items properly subject to being accrued, because of the contingency of petitioner's obligation to pay them. *Commissioner* v. *Brooklyn Radio Service Corporation*, 79 Fed. (2d) 833; *Ames Reliable Products Co.*, 44 B. T. A. 176.

On this issue we decide in favor of respondent.

Reviewed by the Board.

*Decision will be entered pursuant to Rule 50.*

---

SMITH, dissenting: In its income tax return for the fiscal year ended June 30, 1937, the petitioner deducted from gross income an increase of $4,600 in salaries voted to its president and treasurer. The increased salaries were to be paid monthly. They were to be paid, however, subject to approval by the Reconstruction Finance Corporation. At the close of its fiscal year, June 30, 1937, the petitioner had not received the authority of the Reconstruction Finance Corporation to pay the additional salaries and the amount of the salaries unpaid was $4,600. The respondent disallowed the deduction of these accrued salaries in the determination of the deficiency.

It is stipulated that the Reconstruction Finance Corporation on September 3, 1937, approved the increase in the salary of the president in the amount of $2,400 and $1,200 of that amount was paid to

the president on September 13, 1937. On October 11, 1937, the Reconstruction Finance Corporation approved the payment of an additional salary of $600 to the treasurer, which had theretofore been authorized by the petitioner for the taxable year, but disapproved the payment of the balance authorized.

In the Board's opinion it is stated that:

* * * The stipulations of fact do not disclose whether petitioner is on the accrual basis of accounting and do not disclose how petitioner treated the amounts, paid and unpaid, of such salary increases on its books during the taxable year. * * *

I do not think that this statement is correct in view of the stipulated facts. The trial balance clearly shows that the petitioner was on the accrual basis. It includes among its assets inventories and deferred charges and among its liabilities accrued expenses, including officers' salaries in the amount of $11,600. It is not necessary to stipulate specifically that the return was made on the accrual basis where the stipulated facts show that it was.

In *United States* v. *Anderson*, 269 U. S. 422, the Supreme Court held that the accrual system was incorporated into the law:

* * * to enable the taxpayers to keep their books and make their returns according to scientific accounting principles, by charging against income earned during the taxable period, the expenses incurred in and *properly attributable to* the process of earning income during that period. * * * [Italics supplied.]

Quite clearly the additional salaries voted the petitioner's president and treasurer were "expenses incurred in and properly attributable to the process of earning income" during the taxable year. They were not expenses of the taxpayer of the years during which the payments were made.

It is furthermore to be noted that petitioner's income tax return for the fiscal year ended June 30, 1937, was not due to be filed until September 15, 1937. Prior to that date the Reconstruction Finance Corporation had approved the payment of an additional salary to the petitioner's president of $2,400. I do not see in any event how the Board can say that that was not an expense of the petitioner of the taxable year.

In *Fawcus Machine Co.* v. *United States*, 282 U. S. 375, it was held that additional excise taxes upon the profits of the petitioner for the year 1918 accrued in that year even though the Revenue Act of 1918 was not passed until February 24, 1919, and made changes in the rates. The court held that the change made by Congress in the rates of the excise tax was made in ample time to enable the taxpayer to deduct from gross income in its income tax return for

1918 the excise taxes which had accrued for the year 1918 at the increased rates authorized by the Revenue Act of 1918. By the same process of reasoning I think that it should be held that petitioner is entitled to deduct the additional salary for its president authorized by the petitioner's board of directors during and for the taxable year to the extent of $2,400.

The Reconstruction Finance Corporation did not authorize any additional payment of salary to the petitioner's treasurer for the taxable year until October 11, 1937. The additional salary of $600 was paid to the treasurer on June 9, 1938. I think, however, that under the principle of the cases above cited it must be held that the additional salaries voted to the petitioner's president and treasurer for and during the taxable year should be allowed as deductions from the gross income of the taxable year to the extent approved by the Reconstruction Finance Corporation. They were not expenses of the year in which the payments were made.