GUY M. SHELLEY, PETITIONER, ET AL.,[1] *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 107205–107208.   Promulgated June 9, 1943.

*Harry V. Gott, Esq.,* and *Elmer E. Fox, C. P. A.,* for the petitioners.

*John E. Marshall, Esq.,* for the respondent.

---

[1] Proceedings of the following petitioners are consolidated herewith: W. E. Perdew; Harry Litwin; and Erma B. Shelley.

OPINION.

SMITH, *Judge:* The issue presented by these proceedings is whether the Pershell Engineering Co., the petitioner's transferor, is liable for income tax in respect of the profits received in 1938 from the completion and acceptance of an oil refinery in Roumania, the design, drawings, and specifications for which were furnished by Pershell. Pershell kept its books of account and made its income tax returns upon the accrual and long term completed and accepted contract basis. The construction of the oil refinery began in 1936. It was nearing completion in the late summer of 1938. The Roumanian company for whom the refinery was being built was not liable to pay the full contract price until the refinery had been completed and operations had successfully met the prescribed conditions of a 15-day test run. This 15-day test run began late in July 1938. The 15-day period would end on August 13. Immediately prior thereto, or on August 9, the stockholders of Pershell hurriedly called a stockholders' meeting at which a resolution was passed declaring that the corporation had "liquidated all and entire its obligations and has no outstanding indebtedness of any kind or character" and further resolving that the corporation be dissolved. A copy of this resolution was forwarded to the Secretary of State of Kansas and filed in his office on August 11, 1938. The petitioners contend that such actions taken effectually dissolved the corporation under the laws of Kansas in 1938; that since the dissolution was effected prior to the completion of the Roumanian contract the remuneration which was received thereafter was not in-

come of Pershell but was income only of the stockholders who actually received it from their trustees.

The respondent denies that Pershell had liquidated all and entire its obligations and that it had no outstanding indebtedness as of August 9, 1938, or August 11, 1938. He points out that Pershell was not entitled to receive any income whatever from the Roumanian job until after the 15-day continuous test run had shown that the plant when completed would meet the guarantees made with respect to its performance; that if it had not met those guarantees Pershell would have been indebted to Craig to the extent of double the payment due W-K from the job for the failure of the equipment or installation to meet the guarantees. It is also in evidence that Pershell's income tax return for 1938 shows that on August 9, 1938, it had the following liabilities:

| | |
|---|---|
| Accounts payable | $15, 597. 62 |
| Taxes | 1, 800. 35 |
| Work in progress billed | 19, 982. 34 |

The respondent therefore submits that Pershell was not actually dissolved on August 11. 1938. as claimed by the petitioners.

The pertinent provisions of the Kansas statutes bearing upon this point are sections 17–801. 17–808. and 17-809 of the General Statutes of Kansas. 1935. which provide as follows:

17–801. *Voluntary dissolution.* Any corporation that has liquidated its obligations may be dissolved by vote of the stockholders, as provided in section 17 [17–215] of this act; the resolution of dissolution shall state that the corporation has no outstanding indebtedness. Upon the filing of a copy of such resolution, certified by the president and secretary, in the office of secretary of state, the corporation shall cease to exist.

\* \* \* \* \* \*

17–808. *Directors as trustees in cases of dissolution; their powers and duties.* Upon the dissolution of any corporation already created by or under the laws of this state, unless a receiver is appointed by some court of competent authority. the president and directors, or managers of the affairs of the corporation, at the time of the dissolution, by whatever name they may be known in law shall be trustees of the creditors and stockholders of such corporation. with ful power to settle the affairs, collect the outstanding debts, and divide the moneys and other property among the stockholders. after paying the debts due and owing by such corporation at the time of its dissolution, as far as such money and property will enable them; and for this purpose they may maintain or defend any judicial proceeding.

17–809. *Trustees responsible to creditors and stockholders.* The trustees mentioned in the last section shall be severally responsible to the creditors and stockholders of such corporation. to the extent of its property and effects that shall have come into their hands

We do not think that in the circumstances of this case it is necessary to decide whether Pershell was actually dissolved on August 11. 1938, for we are of the opinion that that corporation, keeping its books

of account as it did on the accrual basis, was liable for income tax upon the amount received from the completion of the Roumanian contract.

Section 41 of the Revenue Act of 1938 provides in part:

The net income shall be computed upon the basis of the taxpayer's annual accounting period (fiscal year or calendar year, as the case may be) in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; but if no such method of accounting has been so employed, or if the method employed does not clearly reflect the income. the computation shall be made in accordance with such method as in the opinion of the Commissioner does clearly reflect the income. * * *

Pershell is not a petitioner in these proceedings. The basis upon which the respondent held Pershell liable for an additional tax for 1938 is not before us. The respondent contends that the question presented is controlled by article 22 (a)–21 of Regulations 101 (promulgated pursuant to section 22 (a) of the Revenue Act of 1938), which reads in part as follows:

ART. 22 (a)–21. *Gross income of corporation in liquidation.*—When a corporation is dissolved, its affairs are usually wound up by a receiver or trustees in dissolution. The corporate existence is continued for the purpose of liquidating the assets and paying the debts, and such receiver or trustees stand in the stead of the corporation for such purposes. (See sections 274 and 298.) Any sales of property by them are to be treated as if made by the corporation for the purpose of ascertaining the gain or loss No gain or loss is realized by a corporation from the mere distribution of its assets in kind in partial or complete liquidation, however they may have appreciated or depreciated in value since their acquisition. * * *

We do not think that this provision of the regulations is determinative of the issue presented. It has application to the case of a corporation the corporate existence of which is continued for the purpose of liquidation. But if Pershell was dissolved by the filing of the copy of the stockholders' resolution of dissolution on August 11. 1938. the Article would not be applicable.

In *United States* v. *Anderson.* 269 U. S. 422. the Court said that the accrual system was incorporated into the law:

* * * to enable taxpayers to keep their books and make their returns according to scientific accounting principles. by charging against income earned during the taxable period the expenses incurred in and properly attributable to the process of earning income during that period; * * *

In *Fawcus Machine Co.* v. *United States*, 282 U. S. 375. it was held that a corporation which kept its books of account upon the accrual basis for the year 1918 was liable for an additional tax imposed upon income for 1918 even though the act imposing the additional tax was not passed until February 1919.

In our opinion the principles applied by the Supreme Court in the above cited cases are applicable here. A corporation or other

taxpayer keeping its books of account on the accrual basis, and making its returns in accordance therewith, is required to include in gross income the income which is earned during such period. No expense was paid by Pershell or by the petitioners after August 9, 1938, with reference to earning its remuneration from the Roumanian contract. In our opinion the corporation's books of account for 1938 do not correctly reflect its income. We think that the respondent had authority under section 41 of the Revenue Act of 1938 to include in the gross income the profits from the Roumanian contract.

Since the petitioners admit their liabilities for the taxes due from Pershell for 1938. provided the adjustment made by the respondent in that corporation's income tax return for 1938 is approved,

*Decisions will be entered for the respondent.*