JOE COKER PONTIAC, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Joe Coker Pontiac, Inc. v. Commissioner
Docket No. 1666-73.
United States Tax Court
T.C. Memo 1975-305; 1975 Tax Ct. Memo LEXIS 68; 34 T.C.M. (CCH) 1332; T.C.M. (RIA) 750305; October 6, 1975, Filed John Joseph Snider and David A. Kroll, for the petitioner. Thomas M. Ingoldsby, for the respondent. WILBUR
MEMORANDUM FINDINGS OF FACT AND OPINION WILBUR, Judge: Respondent determined deficiencies in petitioner's income tax for the tax years 1969 and 1970 in the amounts of $5,044.14 and $352.90, respectively. Due to concessions by the parties the sole issue remaining for decision is whether petitioner, an accrual basis taxpayer, incurred a fixed liability for contributions to its profit sharing plan in the years in issue. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioner [1] is an Oklahoma corporation whose principal place of business at the time the petition was filed was in Oklahoma City, Oklahoma. During the years in issue petitioner was an accrual basis taxpayer which reported its income on a calendar year basis. In 1969 the petitioner's board of directors was comprised of Charles B. Coker, Joe R. Coker and Bette Orr. Charles *70 B. Coker and Joe R. Coker were sole shareholders of petitioner until March 1, 1970 when Joe R. Coker became sole shareholder and president of petitioner. Subsequent to Charles B. Coker's resignation from petitioner, Marion M. Coker became a director of the petitioner. On June 27, 1962 petitioner adopted the Chick Coker Pontiac, Inc. Employee Profit Sharing Retirement Plan (the Plan) which is a qualified plan under section 401. [2] Article VII of the Plan prescribes the contribution formula and provides in relevant part: During the Employer's taxable year that this Plan is adopted and becomes effective or the period thereafter permitted by law, and for each succeeding year the Employer shall contribute to the Plan out of net profits for the same taxable period an amount equal to one-tenth of one (1/10th of 1%) per cent of the basic compensation of the eligible employees, provided that the Employer, in its discretion, may annually pay any additional amount which does not exceed that allowable as a deduction under the Internal Revenue Code. All but an insignificant amount of the accruals at issue were additional amounts over and above the amounts required by the formula. Joe R. Coker *71 was the Plan's trustee during the years in issue. During 1969 and 1970, in compliance with General Motors Corporation's requirements, petitioner prepared and submitted to General Motors Corporation monthly financial statements reflecting the amounts of petitioner's assets and liabilities. On such financial statements, petitioner reflected an accumulating liability to the Plan of $1,000 each month during the years 1969 and 1970, reducing the reflected liability at such times and in such amounts as petitioner paid accrued amounts to the Plan. Each financial statement was submitted to petitioner's officer-directors each month and approved by them, either in their capacity as directors or within their authority as officers, prior to submission thereof to General Motors Corporation. Petitioner made the following cash contributions to the Plan during the years in issue: Date
Amount
December 12, 1969
$3,000
January 28, 1970
3,000
March 3, 1970
6,000
April 16, 1970
3,000
December 9, 1970
8,000
January 21, 1971
1,000
After the close of its 1969 and 1970 taxable *72 years, petitioner held a meeting of the employees covered by the Plan. At these meetings each employee-participant was given a note which indicated the amount contributed to his individual account in the Plan for the preceding year. Prior to the meetings, the employees (with the exception of the office manager) were unaware of the amount of the aggregate contributions or the specific share apportioned to their account. At the annual meetings on January 19, 1970 and January 21, 1971 the petitioner's board of directors approved contributions to the Plan for the years 1969 and 1970 and the shareholders ratified all actions of petitioner's officers for the preceding years. In each of the years in issue, petitioner deducted $12,000 as a contribution to the Plan. Respondent allowed the deduction only to the extent of the cash contribution in each year. OPINION Section 404(a)(3) provides a deduction for employer contributions to qualified profit-sharing plans but the deduction is available only "in the taxable year when paid" regardless of whether the taxpayer reports income on the cash or accrual *73 basis. An accrual basis taxpayer will, however, be deemed to have made a payment on the last day of the year of accrual if the payment on account of that year is made not later than the time prescribed for filing the return for the taxable year. Section 404(a)(6). To qualify for the deduction under the exception provided by section 404(a)(6) an accrual basis employer must both make the payment within the prescribed period and properly accrue the contribution within the taxable year for which the deduction is claimed. Sec. 1.404(a)-1(c), Income Tax Regs.; Precision Industries, 64 T.C. (Aug. 19, 1975). Here, it is clear that the $12,000 payment for each of the years in issue was made within the prescribed period. The sole issue is whether the contribution was properly accrued in the years in dispute. An accrual basis taxpayer may deduct an expense only when all events necessary to determine both the fact and the amount of the liability have occurred. Sec. 1.461-1(a)(2), Income Tax Regs. *74 ; United States v. Anderson,269 U.S. 422 (1926). The parties agree that whether the all events test has been satisfied in a particular situation is essentially a factual question and that each case must be resolved upon its own facts. While hardly free from doubt, we believe that on the particular facts here presented, the amounts petitioner accrued on its records for 1969 and 1970 for contributions to the Plan were properly accruable in those years. During 1969 Charles B. Coker and his son, Joe Coker, each owned 50 percent of petitioner's stock. They were president and vice-president, and comprised two-thirds of the board of directors. The remaining director was Bette Orr, an employee of 22 years, who was also secretary-treasurer and office manager. Sometime in 1970 Joe Coker became the sole shareholder, and Marion Coker replaced Charles Coker as a director. In accordance with requirements of General Motors, monthly financial statements were submitted to General Motors during the years in issue. These statements reflected an accumulating liability of $1,000 per month to the Plan (periodically reduced to reflect payment) during 1969 and 1970. [3] The statements were *75 of importance to petitioner and immediately after the statements were prepared by Bette Orr, the directors would meet to go over the statements, consider and adopt changes, and grant final approval. Respondent objects that this conclusion is based on the testimony of Joe Coker and Bette Orr, uncorroborated by corporate minutes. However, we frankly believed the testimony of these individuals, and do not find the lack of corporate minutes, while surely to be preferred, an insurmountable defect on these particular facts. We long ago recognized that corporate action relative to compensation--particularly in the case of closely held corporations--may be informal as long as it is clearly established. W. H. Harris Grocery Co., Inc.,3 B.T.A. 216 (1925); Cataract Ice Co.,23 B.T.A. 654 (1931). At bottom, respondent *76 may not be denying these individuals met to approve the statements, but simply contending that they did so as officers of the corporation rather than as directors. In a small corporation, the principal movers often wear several hats--directors, officers, and employees--and it is not always clear, especially to an outsider, which hat is being worn at any particular time. Nevertheless, in the case of a closely held corporation, owned, controlled, and managed by one or two individuals, Oklahoma law presumes, in the absence of proof to the contrary, that these individuals act within the scope of their authority in conducting the business of the corporation. Qualker Inv. Co. v. Cooper,223 P. 628 (1924). This is especially true where authority "may be inferred from the facts and circumstances of the particular case, as from a course of conduct or dealing by the corporation with its officers and agents." East Cent. Okl. Elec. Coop., Inc. v. Oklahoma G. & E. Co.,505 P.2d 1324, 1327 (Okla. 1973). We believe that even if the approvals were given in the capacity *77 of officers, they were within their authority and reflected the policy established by the corporation, particularly on these facts. While respondent correctly notes that a uniform contribution pattern failed to develop in the early years, he is equally correct in pointing to a consistent pattern in later years. Thus, petitioner contributed $9,000 to the Plan for each of the years 1966, 1967, and 1968, and $12,000 for 1969 and for 1970. In at least the last 3 years the amounts were accrued throughout the year on the books. At the beginning of each year, the officers met with the affected employees to explain Plan operations in the prior year, and to give them a written report on the increase in their individual account by reason of the contribution petitioner had made to the fund. About that time the annual meeting of the board of directors was held, and after being told what the president had done with regard to contributions to the Plan, the board uniformly (and apparently routinely) "ratified, confirmed, and approved" what had been done. [4] The employees were kept fully informed and the amounts accrued were uniformly paid. This pattern of dealing with the Plan for one-half a decade, *78 especially in the context of a closely held corporation, leads us to conclude that the accruals, if not authorized by the owner-managers when wearing their director hats, were within the scope of their authority as officers. *79 Respondent contends that in any event petitioner cannot prevail since it is an inexorable requirement that in order for the accruals to be proper, the affected employees had to be informed of these accruals before the end of the year in question. [5] We have some difficulty perceiving why this should be an indispensable part of the all events test in every instance. Additionally, we note that Bette Orr was an affected employee and she was informed each month of the accrual for that month. While she may have acquired her knowledge while wearing her director or officer hat, she nevertheless retained the knowledge as an employee; not being a stockholder, she could only stand to lose if the accruals were not in accord with the facts. And we note that respondent, in observing that the Cokers "had unrestrained control of the petitioner" has insisted that "Mrs. Orr was basically an employee of the petitioner * * *". We are concerned with the appropriate period for recognizing the liability for deferred compensation. *80 It certainly accords with no one's intent nor the economic realities to recognize $3,000 liability in 1969 and $20,000 liability in 1970. Based on the evidence in its entirety, we believe the liability for this compensation should be accrued for the period to which the services relate, thus matching the cost of the services to the income those services generate. Due to concessions by the parties, Decision will be entered under Rule 155.
Footnotes
1. Petitioner's corporate name was Chick Coker Pontiac, Inc. until April 17, 1970 when it was changed to Joe Coker Pontiac, Inc.↩
2. All references are to the Internal Revenue Code of 1954 unless otherwise indicated.↩
3. Since the statements were prepared from petitioner's books, it is clear that the $1,000 per month was actually accrued throughout the year. This also accords with the annual statements prepared by petitioner's certified public accountants.↩
4. The perfunctory nature of the proceeding is indicated from the 1970 minutes stating that the 1969 contribution was 9,000, although the financial statements and books and records accrued $12,000, and $12,000 was paid for 1969 by the due date of the return. The following year's (1970) contribution was $12,000 (on the books and in the corporate minutes), all of which was paid by the date of the directors' meeting (January 21, 1971) ratifying the 1970 contribution. It is, therefore, clear that the officer-directors-managers accrued and contributed $3,000 for 1969 that is not even accounted for in the directors' meeting, demonstrating that the monthly accruals by the officers controlled contributions to the fund rather than posthoc↩ confirmations by the officers wearing their directors' hats. It should be noted that respondent has not referred to this discrepancy for 1969 (indeed respondent is only allowing $3,000 for that year) or made it an issue in any way.
5. Respondent cites Rev. Rul. 71-38, 1971-1 C.B. 130 to this effect. For the effect of a ruling, see Estate of Grace E. Lang,↩ 64 T.C. (June 12, 1975).